IN THE

# United States Court of Appeals
# for the Federal Circuit

## IN RE UNITED STATES,

### DEFENDANT-APPELLANT

_____

APPEAL FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE
IN NO. 1:21-CV-00288-SAV, JUDGE STEPHEN A. VADEN

## BRIEF OF COURT-APPOINTED *AMICUS CURIAE*
## IN SUPPORT OF AFFIRMANCE OF THE DECISION UNDER REVIEW

ANDREW J. DHUEY
*Amicus Curiae*

BRIDGET A. CLARKE
*Amicus Curiae co-counsel*

456 Boynton Avenue
Berkeley, CA  94707
(510) 528-8200
ajdhuey@comcast.net

28 April 2025

# CERTIFICATE OF INTEREST[1]

*Amicus Curiae* certifies the following:

1. The full name of every entity represented by me is:

N/A; filing party is an attorney appointed by the Court on 20 February 2025 to be an *Amicus Curiae*.

2. The names of the real parties in interest represented by me are:

N/A

3. All parent corporations and any publicly held companies that own 10% or more of stock in the entities represented by me are:

N/A

4. The names of all law firms and the partners or associates that appeared for the entities now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Andrew J. Dhuey, Bridget A. Clarke

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal is:

*In Re United States*, Federal Circuit case no. 25-127 (pet. for writ of mandamus)

6. Organizational Victims and Bankruptcy Cases: Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case. *See* Fed. Cir. R. 47.4(a)(6).

DATED: 28 April 2025                                    /s/ Andrew J. Dhuey

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *Amicus Curiae* confirms that no party or counsel for any party authored this brief in whole or in part, and that no person other than *Amicus Curiae* made any monetary contribution intended to fund the preparation or submission of this brief.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................... i

TABLE OF AUTHORITIES ....................................................... iv

STATEMENT OF INTEREST ...................................................... 1

INTRODUCTION .............................................................. 1

ARGUMENT ................................................................. 3

I.   The Court maintains appellate jurisdiction in this case via the
     "capable of repetition, yet evading review" exception
     to mootness ......................................................... 3

II.  The Trade Court correctly interpreted section 1516a(b)(2)(B) to
     acknowledge its discretion to independently determine the
     confidentiality of the information in the administrative record and the
     terms and conditions of disclosing such information in its Merits
     Decision ............................................................ 8

     A.   In contrast to the statutory provisions governing the
          Commission in antidumping and countervailing duty cases,
          section 1516a(b)(2)(B) recognizes the broad discretion of
          Article III courts to disclose confidential materials in their
          judicial decisions ............................................. 8

     B.   The Commission's proposed interpretation of section
          1516a(b)(2)(B) runs afoul of three canons of statutory
          construction ................................................. 11

          1.   Importing into the unqualified, permissive language of
               section 1516a(b)(2)(B) the restrictive, mandatory terms
               of section 1677f would fail to account for how Congress
               deliberately used starkly different language for the
               courts' and the Commission's treatment of confidential
               materials .............................................. 11

2.      The absence of ambiguity in section 1516a(b)(2)(B) makes the Commission's reference to legislative history inappropriate, and regardless, nothing in the quoted Senate Report suggests any Congressional intent to restrict the contents of judicial decisions ...................... 12

3.      The Commission's proposed interpretation of section 1516a(b)(2)(B) cannot be squared with Article III and the First Amendment ........................................................ 14

        a.      The Commission's proposed interpretation of section 1516a(b)(2)(B) would encroach upon the Judicial Branch's core Article III authority to issue opinions that explain both the factual and legal bases for judicial decisions ................................. 15

        b.      Construing section 1516a(b)(2)(B) to include a conclusive presumption that courts may never disclose confidential materials in publicly-available judicial opinions cannot be squared with a presumptive First Amendment right of public access to judicial records ..................................... 17

III.    The Trade Court did not abuse its discretion by including information that the Commission considers BPI in the Merits Decision ............... 20

    A.      It was not an abuse of discretion for the Trade Court to enforce its bracketing rule for confidential information ....................... 22

    B.      The Trade Court's factual findings regarding the confidentiality of the information disclosed were not clearly erroneous ......... 23

    C.      With regard to material that is arguably BPI, the Trade Court properly balanced the public right of access to judicial decisions with confidentiality interests ..................................... 24

CONCLUSION ............................................................................. 29

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ...................... 30

# TABLE OF AUTHORITIES

**Page**

## CASES

*AmerGen Energy Co., LLC v. United States*, 115 Fed. Cl. 132 (2014) ....... 26

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2014)............................................................................7

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) .......................................... 25

*Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*,
710 F.2d 1165 (6th Cir. 1983) ...................................................... 19

*Consolidation Coal Co. v. United States*, 528 F.3d 1344 (Fed. Cir. 2008).. 14

*Courthouse News Serv. v. Corsones*, 131 F.4th 59 (2d Cir. 2025).............. 19

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ................ 19

*CVB, Inc. v. United States,* 675 F. Supp. 3d 1324; 2023 Ct. Intl. Trade
LEXIS 189 (Ct. Int. Trade Dec. 19, 2023) ......................................4

*CVB, Inc. v. United States*, Fed. Cir. case no. 24-1504 ........................... 4, 21

*Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002)................... 12

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implant, Inc.*,
990 F.3d 1364 (Fed. Cir. 2021) .................................................. 8, 20, 23-24

*Doe v. Reed*, 697 F.3d 1235 (9th Cir. 2012)...................................................4

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007).................................. 4-5

*Humane Soc'y of the United States v. Clinton,* 236 F.3d 1320
(Fed. Cir. 2001)................................................................................3

*In Re United States*, Fed. Cir. case no. 25-127
(pet. for writ of mandamus) .................................................... i, 6-7

*In re Violation of Rule 28(d)*, 635 F.3d 1352 (Fed. Cir. 2011) ........ 20, 23, 25

*Indian Harbor Ins. Co. v. United States*, 704 F.3d 949 (Fed. Cir. 2013)..... 12

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016).............. 10

*Leopold v. United States*, 964 F.3d 1121 (D.C. Cir. 2020) ......................... 18

*Marubeni Am. Corp. v. United States*, 35 F.3d 530 (Fed. Cir. 1994) .............8

*Matter of Cont. Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984).................... 19

*MetLife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017).....................................................15-17, 25-27

*Nixon v. Warner Commc'ns, Inc.*, 435 US. 589 (1978) .............................. 25

*Norfolk Dredging Co. v. United States*, 375 F.3d 1106 (Fed. Cir. 2004)..... 13

*OCP S.A. v. United States*, 2025 Ct. Intl. Trade LEXIS 32 .......5-7, 19-20, 22

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ................... 7, 18

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) .................. 19

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) .......... 7, 18, 20

*Russello v. United States*, 464 U.S. 16 (1983)............................................ 12

*U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)................9

*Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351 (Fed. Cir. 2020) 3, 20, 22, 25

*Union Oil Co. v. Leavell*, 220 F.3d 562 (7th Cir. 2000) ......................... 28-29

**STATUTES**

12 U.S.C. § 5322(d)(5) ............................................................................ 16
19 U.S.C. § 1516a(b)(2)(B) ............................................. 2, 8-9, 11-17, 19-20
19 U.S.C. § 1677f ................................................................................. 11-12

19 U.S.C. § 1677f(b)(1)(A) ..................................................... 10-11
19 U.S.C. § 1677f(b)(2) ................................................................. 19
19 U.S.C. § 1677f(c) ........................................................... 10-11

## CONSTITUTIONAL PROVISIONS

U.S. Const. am. I ........................................................... 14, 17-19
U.S. Const. art. III .................................................. 1, 8, 10, 14-15

## ACTS OF CONGRESS

Dodd-Frank Wall Street Reform and Consumer Protection Act .................. 15
Trade Agreements Act of 1979 .......................................... 8, 12-13

## CONGRESSIONAL REPORTS

S. Rep. No. 96-249 (July 17, 1979) ............................................. 13

## RULES

Fed. R. Civ. P. 11 .................................................................... 5

Fed. R. App. P. 26.1(b) ................................................................. i
Fed. R. App. P. 26.1(c) ................................................................. i
Fed. R. App. P. 29(a)(4)(E) ........................................................... i
Fed. R. App. P. 29(a)(5) ............................................................. 30
Fed. R. App. P. 29(a)(6) ............................................................. 29
Fed. R. App. P. 32(a)(5) ............................................................. 30
Fed. R. App. P. 32(a)(6) ............................................................. 30

Fed. Cir. R. 25.1(a)(1) ............................................................... 26
Fed. Cir. R. 25.1(a)(2) ............................................................... 23
Fed. Cir. R. 47.4(a)(6) ................................................................. i

Ct. Int'l Trade R. 5(g) ...................................................... 20, 22-23

## OTHER AUTHORITIES

3 Edward Coke, Reports
(London, E. & R. Nutt & R. Gosling 1738) (1602) ....................... 18

## STATEMENT OF INTEREST

*Amicus Curiae* Andrew J. Dhuey and *Amicus Curiae* co-counsel Bridget A. Clarke are private attorneys based in Berkeley, California. The Court appointed *Amicus Curiae* on 20 February 2025 to file a brief "in support of the United States Court of International Trade's decision on appeal." D.E. 29. *Amicus Curiae* and co-counsel have no personal or professional connection with any of the parties or counsel who have appeared in this case, nor any personal or professional connection with United States Court of International Trade ("Trade Court") Judge Stephan A. Vaden.

## INTRODUCTION

This case concerns public access to the discrete information necessary to explain an Article III court's conclusion that an Executive Branch agency has improperly exercised its duty to enforce Acts of Congress. Specifically, the United States International Trade Commission ("Commission") sought from the Trade Court redactions of key portions of its opinion that explained why it had rejected the Commission's primary grounds for imposing antidumping and countervailing duties on certain mattress imports. In appealing the Trade Court's refusal to make such redactions, the Commission relies on a statutory framework that governs Commission proceedings, but does *not* govern the Trade Court (nor this Court). Indeed, the statute that *does* apply in this context to Article III courts explicitly and unambiguously acknowledges those courts' discretion "to disclose such material

under such terms and conditions as [they] may order." 19 U.S.C. § 1516a(b)(2)(B). This case thus implicates the core roles of all three branches of government, and the checks and balances among them.

The Trade Court did not abuse its discretion when it rightly rejected the Commission's attempt to hide from public view the factual basis for what the court described as the Commission's "mathematical obfuscation and statistical chicanery to make the mattress industry appear less segmented than it is." Appx647. Instead, the Trade Court correctly interpreted section 1516a(b)(2)(B) as recognizing its discretion to independently determine the confidentiality of the information in the administrative record; correctly considered in its analysis the presumptive public right of access to its decision; and properly exercised its discretion to use approximations, ratios and vague terms in order to balance the need to explain its judicial decision to the public with the need to maintain the confidentiality of proprietary information.

This Court should thus affirm in full the Trade Court's January 8, 2024 decision ("BPI Denial Decision") denying the Commission's motion to accord confidential treatment to what it alleges is business proprietary information ("BPI") disclosed in the Trade Court's December 19, 2023 decision sustaining the Commission's final affirmative material injury determination ("Merits Decision"). The Merits Decision is an exemplary template for judicial decisions that must

touch on purportedly confidential materials in order to adequately explain the court's rationale.

## ARGUMENT

**I.** **The Court maintains appellate jurisdiction in this case via the "capable of repetition, yet evading review" exception to mootness.**

Before reaching the merits of the Commission's appeal, this Court should consider an important jurisdictional issue: Is this appeal moot? Neither the Commission nor the trade bar association *amici* have addressed mootness in their briefs. *See Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020) ("[W]e have an independent duty to assure ourselves of jurisdiction."). While disclosure of the asserted BPI in the Merits Decision arguably let the cat out of the bag (*see id.* at 1358), the "capable of repetition, yet evading review" exception to mootness applies here. *See Humane Soc'y of the United States v. Clinton,* 236 F.3d 1320, 1330-33 (Fed. Cir. 2001) (resolving the threshold justiciability question on mootness by applying this exception before assessing the merits of plaintiffs' appeal and affirming).

In this appeal, the Commission seeks retraction of the Trade Court's *already-filed* Merits Decision, and issuance of a new "opinion with forty-four sets of brackets in place of information contained in the original Slip Opinion," which information the Commission argues is "sensitive proprietary information." Appx052; ITC Br. 22, 47. But the *unredacted* Merits Decision that purportedly

discloses this BPI has been publicly available since its filing on December 19, 2023. *See CVB, Inc. v. United States,* 675 F. Supp. 3d 1324; 2023 Ct. Intl. Trade LEXIS 189 (Ct. Int. Trade Dec. 19, 2023) (published both online and in West's Federal Supplement, 3d).[2]

Perhaps the Commission could have plausibly argued that, had the Trade Court granted rather than denied the Commission's motion for redactions (Appx559-613) back in early 2024, there would have been some meaningful reduction in public knowledge of the purported BPI contained in the decision. But, because that motion was denied, there is nothing that *this* Court could order prospectively that could remedy the fact that the portions of the Merits Decision that the Commission seeks to redact have been widely available to the public since late 2023. *See Doe v. Reed*, 697 F.3d 1235, 1237-40 (9th Cir. 2012) (dismissing case as moot where the at-issue information was "already widely available on the internet," and noting that "once a fact is widely available to the public, a court cannot grant any 'effective relief' to a person seeking to keep that fact a secret").

Nonetheless, this case fits "within the established exception to mootness for disputes capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc*.,

---

[2] The unredacted decision has also been publicly available on this Court's docket for over a year, both in this appeal (Appx001-045) and in a related, voluntarily-dismissed appeal (*CVB, Inc. v. United States*, Fed. Cir. case no. 24-1504 (D.E. 1-2 at 27-71; D.E. 63 at 2)).

551 U.S. 449, 462 (2007). "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal quotation marks omitted).

Here the "challenged action" (*id.*) is the Trade Court's disclosure in the Merits Decision of information the Commission claims is BPI. ITC Br. 22. The Trade Court's disclosure of that information was "in its duration too short to be fully litigated prior to [its] cessation." 551 U.S. at 462. Indeed, disclosure happened instantaneously upon filing the Merits Decision.

And per the Commission, it already faces being "subject[ed] to the same action again" (*id.*) in a "pending case that may be directly affected by the Court's decision in the pending appeal by the Commission . . . ." ITC Br. 1. On February 29, 2024, the Trade Court "relied upon its BPI Denial Decision to order . . . the Commission . . . to appear before it in another case, *OCP S.A. v. United States*, to address the propriety of Rule 11 sanctions for what the [Trade Court] opined was the Commission's possible 'fail[ure] to heed [the BPI Denial Decision's] warning' on 'the law's expectations regarding redaction of allegedly confidential information' . . . in that case." ITC Br. 22-23, n.8. During the Rule 11 hearing in the *OCP* case, the Trade Court emphasized that its BPI Denial Decision involved

> the exact same defendant [as in the *OCP* case – the Commission – and] stood for a simple proposition. Information that is already

publicly available is not confidential. And the [Trade Court] has an independent duty to protect the public's right of access to nonconfidential information. That [BPI Denial Decision] noted that consent by the parties to redact portions of the record simply is not conclusive of the issue.

*OCP S.A. v. United States*, Case No. 1:21-cv-00219-SAV (D.E. 193 at 7). At that

contentious hearing, the Trade Court chided the Commission for filing a heavily

redacted record in the *OCP* case at odds with the BPI Denial Decision. *Id.* (D.E.

193 at 8-12).

In *OCP*, the Trade Court recently issued a thoroughly researched and well-

reasoned opinion citing to its BPI Denial Decision, and ordering the Commission

to "[t]reat as public" the redacted information at issue, and more broadly to "abide

by the statutes and regulations governing confidential treatment of information in

filings of any kind with the [Trade] Court." *OCP*, 2025 Ct. Intl. Trade LEXIS 32 at

*59 (Mar. 27, 2025). That opinion is now the subject of the Commission's petition

for a writ of mandamus pending before this Court. *See In Re United States*, Case

No. 25-127 (D.E. 2-1). Both the Trade Court's opinion and the Commission's

petition in *OCP* recognize that the same disputed issues in this case have recurred

in *OCP*. *See* 2025 Ct. Intl. Trade LEXIS 32 at **4-6, 16, 26; Fed. Cir. case no. 25-

127, D.E. 2-1 at 22 ("Although there are underlying distinctions in the nature of the

BPI disclosed—or threatened to be disclosed in *CVB* as compared to *OCP*—there

are similarities in some of the essential underlying legal issues, in both cases

raising the specter of irreparable harm to the Commission and the parties to the proceedings.").

The question the Commission presents to this Court in both this case and in *OCP* is categorical and clear: whether the Trade Court "was statutorily required to preserve the confidential status of the information at issue." ITC Br. 35. According to the Commission, Trade Court judges have *no* discretion to reveal in their decisions information designated in the administrative record as BPI, absent consent of the party that provided the information. ITC Br. 42. The Court has jurisdiction to resolve this recurring issue that would otherwise escape judicial review. Indeed, twice the Supreme Court has invoked this mootness exception to resolve recurring issues related to public access to judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563 (1980); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 6 (1986).[3]

_____

[3] In its response to the Commission's petition for a writ of mandamus in *OCP*, the Trade Court suggests that standing is lacking in this appeal because "the information at issue does not belong to the Commission; it belongs to the parties who took part in the underlying investigation," and those parties declined to appeal the BPI Denial Decision. *In re United States*, Case No. 25-127 (D.E. 7 at 4 & n.1). But the Commission appears to assert here an institutional injury beyond harm to third parties from the disclosure of particular information. It argues that the BPI Denial Decision interferes with its statutory responsibility to "safeguard confidential BPI," which "impact[s] the Commission's ability to collect questionnaire responses" (ITC Br. 46) and has "'a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's fact finding processes.'" ITC Br. 30-31. *See Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799-804 (2015) (the "institutional injury"

**II.  The Trade Court correctly interpreted section 1516a(b)(2)(B) to acknowledge its discretion to independently determine the confidentiality of the information in the administrative record and the terms and conditions of disclosing such information in its Merits Decision.**

**A.  In contrast to the statutory provisions governing the Commission in antidumping and countervailing duty cases, section 1516a(b)(2)(B) recognizes the broad discretion of Article III courts to disclose confidential materials in their judicial decisions.**

As the Commission acknowledges (ITC Br. 26), this appeal hinges largely on the Court's interpretation of the only portion of the Trade Agreements Act of 1979 that addresses the treatment of confidential materials in the administrative record when the case is under judicial review: 19 U.S.C. § 1516a(b)(2)(B). Although this Court reviews the Trade Court's BPI Denial Decision for abuse of discretion, it reviews *de novo* the Trade Court's interpretation of section 1516a(b)(2)(B). *See DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implant, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) (abuse of discretion standard of review applied to court's decision not to file amended complaint under seal or with redactions; it is an abuse of discretion if a court's "decision rests on a legal error"); *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 534 (Fed. Cir. 1994) (statutory interpretation is a question of law subject to *de novo* review).

---

alleged by the plaintiff-appellant Arizona Legislature based on its "'primary responsibility' for redistricting" conferred standing).

Section 1516a(b)(2)(B) remains unamended since the original legislation in

1979:

> The confidential or privileged status accorded to any documents,
> comments, or information shall be preserved in any action under this
> section. Notwithstanding the preceding sentence, the court *may*
> examine, in camera, the confidential or privileged material, and *may
> disclose* such material under such *terms and conditions* as it *may
> order.*

19 U.S.C. § 1516a(b)(2)(B) (emphasis added). The Court has had only one

occasion to consider this two-sentence statutory provision, and that case did not

present a question of *public* disclosure of confidential information – only whether

in-house counsel should be allowed access to confidential information under a

protective order. *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).

Unlike the Trade Court (and, presumably, this Court and the Supreme

Court), which "may disclose" confidential material, the Commission is *strictly

prohibited* from publicly disclosing material designated by third parties as

proprietary:

> Except as provided in subsection (a)(4)(A) and subsection (c),
> information submitted to the administering authority or the
> Commission which is designated as proprietary by the person
> submitting the information shall not be disclosed to any person
> without the consent of the person submitting the information, other
> than [a limited set of federal officers and employees directly involved
> in investigations].

19 U.S.C. § 1677f(b)(1)(A). The first of two exceptions mentioned allows the Commission to issue public "summaries" of "proprietary information received in the course of a proceeding if it is disclosed in a form which cannot be associated with, or otherwise be used to identify, operations of a particular person." 19 U.S.C. § 1677f(b)(1)(A). The second is for disclosure to litigants before the Commission, but only under a protective order. 19 U.S.C. § 1677f(c).

Congress thus recognized that there should be two starkly different statutory provisions concerning the same material designated by its submitter as confidential/proprietary. An Article III court *may* examine this material in camera; it *may* disclose this material; and it *may* impose terms and conditions regarding such a disclosure. The Commission, however, *shall not* make an unconsented disclosure of this material *to any person*, aside from very narrow and specific exceptions that preserve confidentiality of the material. By using the permissive *may* regarding the court, and the mandatory *shall not* for the Commission, Congress unambiguously acknowledged the courts' wide discretion regarding the disclosure of confidential/proprietary material. "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). "When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Id.* at 172.

**B.    The Commission's proposed interpretation of section 1516a(b)(2)(B) runs afoul of three canons of statutory construction.**

The Commission's proposed interpretation of the second sentence of section 1516a(b)(2)(B) includes two atextual limitations on a court's discretion to disclose confidential material. According to the Commission, "may disclose such material" is limited to disclosures *to parties* in antidumping and countervailing duty cases. And the "terms and conditions" of disclosure the court "may order" are limited to *protective* orders. ITC Br. 27. The Commission's interpretation runs afoul of at least three canons of statutory construction: 1) It ignores the particular differences in language Congress used with regard to the courts' and the Commission's respective treatment of confidential materials; 2) It imposes an atextual limitation on unambiguous statutory text via legislative history; and 3) It would render section 1516a(b)(2)(B) constitutionally infirm.

**1.    Importing into the unqualified, permissive language of section 1516a(b)(2)(B) the restrictive, mandatory terms of section 1677f would fail to account for how Congress deliberately used starkly different language for the courts' and the Commission's treatment of confidential materials.**

Congress is presumed to have deliberately used the unrestricted terms *disclose* and *order*, and the permissive term *may* (three times) in section 1516(a)(b)(2)(B). The same Act of Congress, with regard to the same confidential information, expressly limited the Commission's disclosure discretion. In Commission proceedings, confidential information "shall not be disclosed to any

person without the consent of the person submitting the information." 19 U.S.C. § 1677f(b)(1)(A). The only permitted orders of the Commission to disclose confidential information are *protective* orders. 19 U.S.C. § 1677f(c) ("Limited disclosure of certain proprietary information under protective order").

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). The Commission's proposed interpretation of section 1516a(b)(2)(B)'s unrestricted and permissive terms wrongly imposes on the courts the express disclosure limitations and prohibitions Congress imposed only on the Commission via section 1677f.

> **2.** **The absence of ambiguity in section 1516a(b)(2)(B) makes the Commission's reference to legislative history inappropriate, and regardless, nothing in the quoted Senate Report suggests any Congressional intent to restrict the contents of judicial decisions.**

The Commission improperly turns to the legislative history of the Trade Agreements Act of 1979 in order to read atextual limitations on to the unambiguous terms *disclose* and *order* in section 1516a(b)(2)(B). But "reference to legislative history is inappropriate when the text of the statute is unambiguous." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 956 (Fed. Cir. 2013) (quoting *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002)). The

Commission does not contend there is any ambiguity in section 1516a(b)(2)(B). *See* ITC Br. 26-27.

Regardless, the Commission quotes what is apparently the only sentence in the entire legislative history of the Trade Agreements Act of 1979 that discusses the courts' disclosure discretion in antidumping and countervailing duties cases: "Special provision would be made in subsection (b)(2)(B) for preserving the confidential or privileged status of any materials contained in this record, including, where the court determines it would be appropriate, the disclosure of the privileged or confidential material only under the terms of a protective order." S. Rep. No. 96-249 at 248 (July 17, 1979).

It is unsurprising that there would be a reference in the legislative history to the most typical type of disclosure of confidential material that the Trade Court would order: to a litigant, and under a protective order. But this single sentence from the Senate Finance Committee's report – which itself acknowledges the court's discretion to determine what "would be appropriate" – cannot bear the heavy weight the Commission has hoisted upon it. By simply providing one example of discretionary disclosure, this sentence reveals no legislative intent to limit the courts' discretion to make public disclosures of confidential materials. And even if it had, such an intention did not make it into the statutory text. *See Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004).

("The language of the statute at issue in this case is clear and unambiguous, and absent extraordinary circumstances our inquiry must end here. . . . Thus, it is unnecessary to seek clarification in the admittedly sparse legislative history.").

### 3. The Commission's proposed interpretation of section 1516a(b)(2)(B) cannot be squared with Article III and the First Amendment.

The Commission brushes away all public-access caselaw with its sweeping claim that the "statute, and not the common law right of public access, determines whether information should or should not be disclosed." ITC Br. 36. But even if Congress had expressly written section 1516a(b)(2)(B) as restrictively as the Commission suggests that it should be interpreted, that would hamstring the Judicial Branch's core Article III authority to issue publicly-available opinions explaining both the factual and legal grounds for judicial decisions. It would also run afoul of what five federal circuit courts of appeal have held to be a presumptive First Amendment right of public access to judicial records. Consequently, this Court should reject the Commission's interpretation because it would render section 1516a(b)(2)(B) unconstitutional both as an encroachment upon the Judicial Branch's core decision-making authority and per a First Amendment right of access. *See Consolidation Coal Co. v. United States*, 528 F.3d 1344, 1348 (Fed. Cir. 2008) ("Even if we were to assume that the statute is ambiguous as to the meaning of 'coal produced,' the government's construction must still prevail as it

is the only reasonable construction which preserves the constitutionality of the statute.").

### a. The Commission's proposed interpretation of section 1516a(b)(2)(B) would encroach upon the Judicial Branch's core Article III authority to issue opinions that explain both the factual and legal bases for judicial decisions.

Cloaking from public eyes the key facts that inform a judicial decision would disrupt the Judicial Branch's core role in the administration of justice. The vital function of case precedents, whether binding or merely persuasive, is to direct and influence future court decisions involving similar facts, as well as to inform and guide lawmakers and, in this context, domestic manufacturers, importers, and trade unions as they go about their business and plan for the future. But the direction and guidance that judicial decisions are supposed to provide would be significantly diminished by pockmarked precedents, replete with redactions that hide the key facts of the case.

In *MetLife, Inc. v. Fin. Stability Oversight Council*, the D.C. Circuit recognized these constitutional concerns in the context of a federal agency's contention that a statute restricted the content of a judicial decision. *MetLife* presented the question of "whether the Dodd-Frank Act abrogates the common-law right of public access to judicial records." 865 F.3d 661, 663 (D.C. Cir. 2017). The Financial Stability Oversight Council contended that Dodd-Frank's confidentiality

provisions were so strict that they "require a court to redact portions of its own opinion that discuss data or information submitted by a company to the Council even key applications of law to fact." *Id.* at 674.

The D.C. Circuit rejected the Council's proposed statutory construction, observing that adopting it would "contradict a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public." *Id.* at 674-75. Indeed, the *MetLife* court recognized that if Congress were ever to impose such a restriction on the Judicial Branch, it would raise grave separation-of-power concerns. "We take no position on the extent to which Congress could constitutionally mandate the sealing of judicial records or opinions. We conclude only that [12 U.S.C.] § 5322(d)(5) does not embody such a mandate." *Id.* at 675, n.18. Like the Council in *MetLife*, here the Commission proposes an "extra-textual" (*see id.* at 670) construction of section 1516a(b)(2)(B) that would improperly encroach on the Judicial Branch's core decision-making authority.

Consider this sentence from the underlying merits opinion in this case: "The Commission's statement that the three largest domestic producers of flat-packed mattresses also produced boxed mattresses obscured the fact that their boxed mattress production was negligible." Appx028-029. The Commission asked the Trade Court to redact the word *negligible* on the ground that it "constitutes sensitive BPI concerning confidential domestic production operations of the three

largest domestic producers." Appx620. Without seeing the word *negligible* in this sentence, the reader of the Merits Decision cannot fully understand the Trade Court's rejection of the Commission's primary rationale for imposing duties – *i.e.*, the flat-packed and boxed mattress are a single market. Appx024-035 (identifying multiple errors that demonstrate "the Commission's unfortunate attempt to paint a perfect picture of an unsegmented market"). Nor could the reader weigh the fairness or accuracy of the Trade Court's charge that the Commission engaged in "statistical chicanery" regarding what the Trade Court concluded were two separate markets. Appx024.

Fortunately, section 1516a(b)(2)(B) presents no difficult separation-of-powers question for the Court to resolve. It contains an express and unqualified recognition of the courts' authority to disclose confidential materials. There is no reason to read atextual limitations into section 1516a(b)(2)(B) that would disrupt the centuries-old norm that courts have discretion to include confidential materials in judicial decisions. *Cf. MetLife*, 865 F.3d at 675 ("We would not expect Congress to upset such a norm without saying so.")

> **b.  Construing section 1516a(b)(2)(B) to include a conclusive presumption that courts may never disclose confidential materials in publicly-available judicial opinions cannot be squared with a presumptive First Amendment right of public access to judicial records.**

The Supreme Court has recognized the public's First Amendment rights to attend criminal trials and preliminary hearings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (cleaned up) ("[T]he right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and of the press could be eviscerated."); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) (cleaned up) ("[A] qualified First Amendment right of access attaches to preliminary hearings . . . ."). The respective holdings of *Richmond Newspapers* and *Press-Enterprise* were grounded in the tradition of public access to those judicial proceedings. 448 U.S. at 578 ("The right of access to places traditionally open to the public, as criminal trials have long been, may be seen as assured by the amalgam of the First Amendment guarantees of speech and press"); 478 U.S. at 10 ("[T]here has been a tradition of accessibility to preliminary hearings . . . .").

Public access to judicial decisions is no less traditional or constitutionally important than access to trials and preliminary hearings. "[S]ince at least the time of Edward III, judicial decisions have been held open for public inspection." *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (citing 3 Edward Coke, Reports, at iii-iv (London, E. & R. Nutt & R. Gosling 1738) (1602)). And understanding how a court reached its decision is arguably *more* important to

preserving First Amendment guarantees than access to trials and hearings – a court's final decision in a case is the moment of greatest judicial impact on the litigants and on the public as a whole. Indeed, at least five regional circuits have recognized a presumptive First Amendment right of timely access to judicial records, generally. *See, e.g., Courthouse News Serv. v. Corsones*, 131 F.4th 59 (2d Cir. 2025); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1176 (6th Cir. 1983); *Matter of Cont. Ill. Sec. Litig.*, 732 F.2d 1302, 1308-09 (7th Cir. 1984); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014).

Adopting the Commission's proposed interpretation of section 1516a(b)(2)(B) and its resulting radical, categorical restriction on public access to the contents of judicial decisions would put the Court in direct conflict with the First Amendment jurisprudence of the afore-cited five regional circuits. Instead of a presumptive First Amendment right of public access, there would be a conclusive presumption that the public shall have no access to any material treated by the Commission as confidential in the administrative record, even where that material is at the factual center of a judicial decision.[4]

---

[4] That the Commission almost never challenges "unwarranted" claims of confidentiality made by parties participating in Commission investigations under section 1677f(b)(2) compounds the severity of the First Amendment problem that would result from accepting the Commission's proposed construction of section 1516a(b)(2)(B). *See OCP S.A. v. United States*, 2025 Ct. Intl. Trade LEXIS 32 at

~ 19 ~

This Court has not held that the common law right of access to judicial records is a presumptive First Amendment right, but *Richmond Newspapers* informed the *In re Violation of Rule 28(d)* analysis of whether counsel's excessive redactions in public briefing warranted sanctions. 635 F.3d 1352, 1356 (Fed. Cir. 2011). Accepting the Commission's proposed interpretation of section 1516a(b)(2)(B) would arguably create intra-circuit tension with *In re Violation of Rule 28(d)*, *DePuy Synthes Prods.*, 990 F.3d 1364, 1369-70 (Fed. Cir. 2021), and *Uniloc 2017 LLC*, 964 F.3d 1351, 1358 (Fed. Cir. 2020).

## III. The Trade Court did not abuse its discretion by including information that the Commission considers BPI in the Merits Decision.

Once the Court rejects the Commission's incorrect and unconstitutional interpretation of section 1516a(b)(2)(B), its abuse-of-discretion review of the BPI Denial Decision becomes simple. The over 40 data points that the Commission seeks to redact in the Merits Decision fall into three groups: i) materials the Commission failed to bracket, per Ct. Int'l Trade Rule 5(g); ii) generally-known industry information; and iii) company-specific information that was either not

---

*24, n.4 ("Although the Commission represented to the Court that its processes for challenging confidentiality claims has been used in the past, the Commission admits 'this rarely occurs.' It could not provide any examples of such proceedings.") (internal citations omitted). Questionnaire respondents, accountable to no one, could nearly always hide their responses from the press and public, even if they were essential facts in how the Trade Court reached its decision, and how this Court decided whether to affirm it.

confidential, or was blurred in the Merits Decision via approximations, ratios, or vague terms. With each of these three groups of requested redactions, the Commission has failed to show that the Trade Court abused its discretion in refusing to redact the materials from the public Merits Decision.

Neither at the Trade Court nor before this Court has the Commission made any particularized showing regarding the confidentiality of any of the 40-plus data points for which it sought redaction. The Commission has not articulated any specific harm to anyone that resulted from their inclusion in the public Merits Decision. With each requested redaction, the Commission makes only a general claim that the datum "constitutes sensitive BPI", and that is because the "entirety" of "questionnaire responses, including the identity of" the respondents "are considered BPI by the Commission." Appx620.

It is noteworthy that none of the company litigants joined the Commission in appealing the Trade Court's denial of the redaction motion. Appx672-675. Likewise, none of the company litigants in the later-dismissed appeal from the Merits Decision complained in their briefs about wrongful disclosure of their proprietary information. *See* Fed. Cir. case no. 24-1504, D.E. 29 (opening brief of Appellant CVB, Inc.); D.E. 49 (response brief of seven domestic manufactures and two trade unions).

At bottom, the Commission's position is simply that anything in its questionnaire responses is BPI, regardless of how similar or even identical information is available publicly. *See OCP S.A. v. United States*, 2025 Ct. Intl. Trade LEXIS 32 at *23 ("The Commission repeatedly admits that it treats all information in questionnaire responses as confidential."). That blanket, categorical position is a far cry from a showing that the Trade Court's findings of non-confidentiality are clearly erroneous.

### A. It was not an abuse of discretion for the Trade Court to enforce its bracketing rule for confidential information.

At the Trade Court, the Commission flagrantly violated Ct. Int'l Trade Rule 5(g) with regard to all purchaser questionnaire responses. Appx054. Instead of bracketing the confidential portions of these responses, as Rule 5(g) requires, the Commission simply placed a stamp at the top of each page of these responses, claiming that the content of the entire page is BPI. Appx055. *Amicus Curiae* does not have access to the Confidential Appendix on appeal, but the pagination in the public Appendix (TOC 3) suggests that there are 787 pages of purchaser responses. The Trade Court properly declined to undertake the Herculean task of guessing which portions of the unbracketed information are confidential. Appx055-057.

"A district court does not abuse its discretion simply because it elects to strictly enforce its local procedural rules." *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1363 (Fed. Cir. 2020) (citations omitted). The Trade Court thoroughly

explained how the Commission failed to comply with the bracketing requirement of Ct. Int'l Trade Rule 5(g) with regard to this non-party purchaser information. Appx053-057. On appeal, the Commission attempts to convert its own rule noncompliance into an abuse of discretion by the rule enforcer.

Members of the Federal Circuit bar have faced professional sanctions for noncompliance with the Court's redaction rules. *See In re Violation of Rule 28(d)*, 635 F.3d 1352 (Fed. Cir. 2011). For example, the Court warns litigants who fail to include the required cover letter accompanying a confidential filing that the Court "may provide access to confidential or sealed material to all parties and counsel in a case who are not identified on such a cover letter." Fed. Cir. R. 25.1(a)(2).

Here, the Trade Court reasonably and fairly enforced its redaction rule. The easy fix for the Commission prospectively is to comply with court rules regarding confidential information.

### B. The Trade Court's factual findings regarding the confidentiality of the information disclosed were not clearly erroneous.

The Trade Court found that much of the information the Commission asserted was BPI was not, in fact, confidential. Specifically, the Trade Court made non-confidentiality findings regarding "general market trends of declining Chinese imports and rising imports from other countries" (Appx059), "information on market trends and market share" (Appx059), and the mattress production of Ashley Furniture (Appx060). These findings are reviewed for clear error. *DePuy Synthes*

*Prods*, 990 F.3d at 1371 ("Under the Uniform Trade Secrets Act, whether information constitutes a trade secret is a question of fact. We thus review such determinations for clear error.") (citations omitted).

On appeal, the Commission has little to say about the Trade Court's findings that much of this information was not in fact confidential. *See* ITC Br. 44-45. In fact, the Commission concedes that with regard to certain industry data, "somewhat similar information may have been publicly reported by the cited news articles". ITC Br. 45. The Commission has thus not met its burden of showing clear error for the Trade Court's factual findings of non-confidentiality.

**C.     With regard to material that is arguably BPI, the Trade Court properly balanced the public right of access to judicial decisions with confidentiality interests.**

The Merits Decision includes some company-specific information regarding the types of mattresses producers manufactured and purchasers bought during the Commission's period of investigation. While analyzing this data in its decision, the Trade Court disclosed the names of companies but avoided revealing exact figures by using ratios. *See* Appx029, Appx031-032. Although the Commission does not specifically discuss this information in its appellate brief here, at the Trade Court it requested its redaction from the Merits Decision. Appx620-622. The Trade Court did not abuse its discretion by including this information in its Merits Decision, even if it is arguably BPI.

In determining whether to disclose BPI in a judicial decision, a court should engage in a balancing test, weighing not only the parties' and non-parties' interests in confidentiality, but also the public's interest in access as well as the " 'duty of the courts.' " *In re Violation of Rule 28(d)*, 635 F.3d at 1356-57 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 US. 589, 602 (1978)). "[O]nly the most compelling showing can justify limitations on the disclosure of testimony or documents actually introduced at trial." *Id.* at 1358 (cleaned up); *see also Uniloc 2017 LLC*, 964 F.3d at 1364 ("[W]e conclude that the district court failed to make findings sufficient to allow us to adequately assess whether it properly balanced the public's right of access against the interests of the third parties in shielding their financial and licensing information from public view.")

And the greatest "weight to be given the presumption of access" is with respect to documents "ancillary to the court's core role in adjudicating a case." *See Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019). Requiring a compelling showing by the Commission and giving great weight to the public's interest in access was appropriate here, where the information was filed with the Trade Court as part of "judicial review of agency action requir[ing] the court to consider the record upon which an agency made its decision" (*MetLife*, 865 F.3d at 667), and where the Trade Court relied on such information in reaching its decision on the merits.

The Trade Court properly balanced speculative confidentiality interests against the public's weighty interest in access to information that was a basis for the Merits Decision. Significantly, as discussed *supra*, the Commission failed to make any particularized showing of harm to itself or to the providers of the information as a result of disclosure of the ratio information. Moreover, the information is stale. *See* Appx626, Appx630 ("The Commission's period of investigation covered calendar year 2017 through September 2020"; "The Commission based its U.S. industry data on responses from fifty-three domestic producers that represented the vast majority of domestic production in 2019."); *AmerGen Energy Co., LLC v. United States*, 115 Fed. Cl. 132, 141 (2014) ("[I]nformation may lose its confidential nature once it becomes stale"; "[V]ague and speculative allegations of injury from the disclosure of years-old information are not sufficient to overcome the strong presumption favoring public access"); *cf.* Fed. Cir. R. 25.1(a)(1) ("After five (5) years following the end of all proceedings in this court, the court may direct the parties to show cause why confidential filings (except those protected by statute) should not be unsealed and made available to the public.").

Most importantly, this ratio information was central to the Merits Decision's conclusion that the Commission made important errors in its analysis. *See MetLife*, 865 F.3d at 674-75 (recognizing the importance of information "central . . . to

explaining [an] opinion's rationale" and that "judges' decisions and their rationales must be available to the public"). This data related to producer and purchaser specialization, and supported the Trade Court's conclusion that the "manufacturers' data combined with the wholesale purchasers' data tell a much more complicated story than the Commission's initial line that packaging is irrelevant." Appx025, Appx030, Appx034. The Trade Court found based on this information, and contrary to what the Commission had concluded, that "nearly every producer is highly specialized," and that most purchasers "strongly favored one [mattress] packaging type over the other." Appx029-030, Appx032.

The Commission may respond to the above that it sought redaction only of the company names that corresponded to the production/purchase ratios – not the actual ratios. That would overlook how the ratios provide little information if not matched with their respective companies. For example, here is how a key paragraph in the Merits Decision would have read if the Trade Court had made the Commission's requested redactions:



"Of the twelve companies that produced both mattress types in 2019, five produced virtually none of one kind. *Id.* at III-3–6 124,195–98 (providing data that [█████████████ ████████████████] each produced far less than one percent of U.S. production of one kind of mattress). Of the remaining seven domestic manufacturers, four have stark production differences: [████████] produced more of one type of mattress than the other by a ratio of 63-to-1; [████████] had a ratio of 74-to-1; [██████████████] had a ratio of 83-to-1; and [███████████] had a ratio of 60-to-1. *Id.* Of the remaining three companies, [████████] had a ratio of nearly 11-to-1; [██████████████], of nearly 5-to-1; and the lone balanced producer, [████████████], had a nearly 1-to-1 ratio. *Id.*"

Appx620.

The identities of the twelve production companies mentioned in the above paragraph are essential to understanding the significance of the ratios. With a tiny producer, its production ratio makes little difference in the overall industry-specialization analysis. But it makes a tremendous difference whether a very large producer has an 83-to-1 ratio, as opposed to 1-to-1. Removing these company names from the Merits Decision would be a "step that withdraws an element of the judicial process from public view [that] makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil Co. v. Leavell*, 220 F.3d

562, 568 (7th Cir. 2000). The Commission has failed to meet its burden of showing

any justification for such redactions from judicial decisions, much less a

compelling one.

## CONCLUSION[5]

The BPI Denial Decision of the Trade Court should be affirmed.

Date: 28 April 2025                              Respectfully submitted,

/s/ Andrew J. Dhuey

ANDREW J. DHUEY
*Court-Appointed* Amicus Curiae *in Support of the United States Court of International Trade's Decision on Appeal*

BRIDGET A. CLARKE
Amicus Curiae *co-counsel*

456 Boynton Avenue
Berkeley, CA 94707
(510) 528-8200
ajdhuey@comcast.net

---

[5] **Oral argument request.** Under Federal Rule of Appellate Procedure 29(a)(6), *Amicus Curiae* "may participate in oral argument only with the court's permission." *Amicus Curiae* respectfully requests the opportunity to participate in oral argument, should the Court consider that helpful in reaching its decision.

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

This brief complies with: (1) the type-volume limitation of Fed. R. App. P. Rule 29(a)(5) because it contains 6,580 words, excluding the parts exempted by rule; and (2) the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Fed. R. App. P. Rule 32(a)(6) because the body of the brief has been prepared in 14-point Times New Roman font using Microsoft Word 2016.

Date: 28 April 2025                /s/ Andrew J. Dhuey