# United States Court of Appeals for the Federal Circuit

IN RE: UNITED STATES,

*Defendant-Appellant.*

---

*On Appeal from the United States Court of International Trade in No. 1:21-cv-00288-SAV, Honorable Stephen A. Vaden, Judge*

## COMBINED SUPPLEMENTAL RESPONSE BRIEF OF COURT-APPOINTED AMICUS CURIAE IN SUPPORT OF AFFIRMANCE

ALEXANDRA H. MOSS
1246 Huntington Drive
South Pasadena, CA 91030
(818) 281-2191
alex@piplius.org

*Counsel for Amicus Curiae*

AUGUST 11, 2025

CP COUNSEL PRESS (800) 4-APPEAL • (714966)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 24-1566 |
| **Short Case Caption** | In re: US |
| **Filing Party/Entity** | Amicus curiae |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/12/2025

Signature: /s/ Alexandra H. Moss

Name: Alexandra H. Moss

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Amicus curiae | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Alexandra H. Moss | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF INTEREST .................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................1

ARGUMENT ............................................................................................2

I.    The CIT Correctly Applied the Common Law Right of Access ..........................................................................................2

    A.    The Strong Presumption of Access Applies to CIT Opinions ...................................................................2

    B.    The Tariff Act Does Not Preempt the Common Law .................3

        1.    Section 1516a Confirms Court Authority over Access .................................................................3

        2.    Section 1516a Does Not Restrict Courts to Protective Order Access ......................................5

        3.    Section 1516a Preserves Court Authority over Access .................................................................6

    C.    The CIT Correctly Upheld the Presumption of Public Access .....................................................................8

        1.    Overcoming the Presumption of Access Requires a Compelling Showing of Harm from Disclosure ...........8

        2.    No Compelling Reasons for Secrecy Have Been Shown .................................................................9

            a.    Most of the Information at Issue Is Publicly Available ...................................9

            b.    There Is No Dispute that the CIT's Characterizations Are Non-Confidential ..............10

            c.    There Is No Showing of Harm from the Disclosure of Stale Information ...........................11

        d.     The Commission's Concerns Are Not Compelling Reasons to Seal Business Information .............................................................. 12

III.    The Public's Interest in Access Confirms the Presumption Must Stand ......................................................................... 15

      A.    Access Is Necessary to Understand the CIT's Decision .......... 15

      B.    Access Is Necessary to Observe the Commission's Designation Practices ................................................ 16

      C.    The Public Needs Access to Evaluate Potential Abuse of the Commission's Sanctioning Power .................................. 17

CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
  808 F.2d 1471 (Fed. Cir. 1986) ....................................................13, 14

*AmerGen Energy Co., LLC by & through Exelon Generation Co., LLC v.*
*United States,*
  115 Fed. Cl. 132 (2014).....................................................................11

*Apple Inc. v. Samsung Elecs. Co.*,
  727 F.3d 1214 (Fed. Cir. 2013) .........................................................8, 9

*Cal. Steel Indus., Inc. v. United States*,
  747 F. Supp. 3d 1351 (Ct. Int'l Trade 2024).....................................2, 8

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
  965 F.3d 1238 (11th Cir. 2020)...........................................................12

*CNA Fin. Corp. v. Donovan*,
  830 F.2d 1132 (D.C. Cir. 1987)...........................................................12

*Constand v. Cosby*,
  833 F.3d 405 (3d Cir. 2016) .................................................................9

*Cowley v. Pulsifer*,
  137 Mass. 392 (1884) .........................................................................15

*Dawson v. Merck & Co.*,
  No. 112CV1876BMCPK, 2021 WL 242148 (E.D.N.Y. Jan. 24, 2021)..............11

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*,
  990 F.3d 1364 (Fed. Cir. 2021) ......................................................8, 12

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004) .................................................................9

In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.,
  924 F.3d 662 (3d Cir. 2019) .................................................................8

*In re ESML Holdings Inc*,
  135 F.4th 80 (3d Cir. 2025).................................................................5

*In re Violation of Rule 28(D)*,
  635 F.3d 1352 (Fed. Cir. 2011) ...........................................................8

*Isbrandtsen Co. v. Johnson*,
343 U.S. 779 (1952) ...................................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..................................................................4

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) .....................................................2

*Metlife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017)................................................4, 5

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*,
169 F.3d 16 (D.C. Cir. 1999)...................................................13

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ..............................................................2, 12

*OJ Com., LLC v. KidKraft, Inc.*,
34 F.4th 1232 (11th Cir. 2022)................................................12

*People for the Ethical Treatment of Animals v.*
*United States Dep't of Health & Hum. Servs.*,
201 F. Supp. 3d 26 (D.D.C. 2016) , *aff'd*, 901 F.3d 343 (D.C. Cir. 2018),
*aff'd*, 901 F.3d 343 (D.C. Cir. 2018) ....................................13

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ...............................................................16

*Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*,
No. CV 15-1059, 2017 WL 11573695 (D. Del. Aug. 28, 2017).........................11

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.*,
261 F.Supp.2d 1002 (N.D.Ill. 2003)......................................9

*U.S. Int'l Trade Comm'n v. E. & J. Gallo Winery*,
637 F. Supp. 1262 (D.D.C. 1985).........................................13

*Uniloc 2017 LLC v. Apple, Inc.*,
964 F.3d 1351 (Fed. Cir. 2020) .........................................2, 8

*Union Oil Co. of Cal. v. Leavell*,
220 F.3d 562 (7th Cir. 2000)..............................................2, 3

*United States v. Texas*,
507 U.S. 529 (1993) ..............................................................5

*Zavala v. Wal-Mart Corp.*,
No. CIV.A.03-5309 JAG, 2007 WL 2688934 .............................................. 11-12

**Statutes & Other Authorities:**

11 U.S.C. § 107(b)(1).....................................................................................5

19 U.S.C. § 1333(a) ......................................................................................13

19 U.S.C. § 1516a *et seq.* ........................................................................3, 4, 5, 6, 7

19 U.S.C. § 1677f *et seq.* ...............................................................................7, 15

19 C.F.R. § 207.8 ..........................................................................................13

88 Fed. Reg. 85306 (Dec. 7, 2023).........................................................................18

S. Rep. 96-249 (July 17, 1979) ............................................................................6

S. Rep. 100-71 (June 12, 1987).............................................................................14

Scott F. Kieff, *Private Antitrust at the U.S. International Trade Commission*,
14 J. OF COMPETITION L. & ECONS. 1 (Mar. 2018)..............................................14

Amicus Alex Moss is an attorney and Executive Director of the Public Interest Patent Law Institute, a nonprofit organization. She has no personal or professional connection with the International Trade Commission, the United States Court of International Trade, Judge Vaden, or any party or counsel in this case. Amicus's interest is in representing the public's interest to ensure justice in this case and those to come.

## INTRODUCTION AND SUMMARY OF ARGUMENT

These appeals implicate bedrock principles of our justice system: the public's right to access court records and the judiciary's duty to safeguard that right. In both cases, the Court of International Trade (CIT) followed the law: it reviewed requests to redact portions of its opinion, granted those supported by compelling justification, and upheld the strong presumption of access to the rest.

The International Trade Commission (Commission) urges a different approach—one the law forbids. It asks the CIT and this Court to redact judicial records at its request without requiring any justification. That approach would compel courts to violate the law, abdicate their responsibility, and deny the public access to which it is entitled.

The Commission's position is both flawed and dangerous. By demanding judicial deference to agency confidentiality determinations, it would strip courts

of their authority over public access to court records. By concealing court and agency processes, it would block public oversight and erode public trust. Affirmance is necessary to prevent these harms and preserve the government's legitimacy and capacity to function as it has throughout its history.

## ARGUMENT

## I. The CIT Correctly Applied the Common Law Right of Access.

### A. The Strong Presumption of Access Applies to CIT Opinions.

The common law provides a "'general right to inspect and copy public records and documents.'" *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). When applied to documents filed with a court, this right gives rise to "a strong presumption in favor of access." *Id.* (citations omitted).

The strong presumption of public access to the court records at issue here—judicial opinions—is indisputable. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) ("'An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'") (citation omitted); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."); *Cal. Steel Indus., Inc. v. United States*, 747 F. Supp. 3d 1351, 1355 (Ct. Int'l Trade 2024) (The

presumption "'is especially strong' as to 'a court's decrees, its judgments, and its orders.'") (citation omitted).

This presumption is essential to public confidence in the judiciary. As Judge Easterbrook explained: "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil*, 220 F.3d at 568.

### B. The Tariff Act Does Not Preempt the Common Law.

### 1. Section 1516a Confirms Court Authority over Access.

Nevertheless, the Commission contends the presumption of access is inapplicable because section 1516a(b)(2)(B) of the Tariff Act preempts it. *See* Petition 4-5 & Petition 11. The CIT correctly rejected that contention.

Section 1516a(b)(2) governs the "[r]ecord for review" in judicial review of Commission determinations. 19 U.S.C. § 1516a(b)(2). It has two subparts: one that prescribes the record's contents and another that prescribes its treatment of material designated confidential. *See id.*

The latter subpart reads: "The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose

such material under such terms and conditions as it may order." *Id.* at § 1516a(b)(2)(A(B).

As that quotation shows, section 1516a(b)(2)(B) imposes no obligation on courts, let alone any that preempts the common law. The requirement that confidential status be preserved in the administrative record does not constrain the court's authority over access to court records. Lest there be any doubt, the statute explicitly says that "the court . . . may disclose material" notwithstanding the preservation of confidential status. *Id.*

When a statute does not explicitly abrogate the presumption of access, courts do not infer otherwise. *See, e.g.*, *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citation omitted); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.").

In *Metlife*, the D.C. Circuit rejected an interpretation of the Dodd-Frank Act that would have imposed a confidentiality obligation on courts by implication, finding "no reason to read the statute atextually to include such an obligation." *Id.* Moreover, there is a reason *not* to adopt such a reading: the "'presumption favoring the retention of long-established and familiar

principles.'" *Id.* at 674 (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952))).

To overcome that presumption, a statute's abrogation of common law must be clear and unambiguous. For example, a number of circuit courts have concluded the Bankruptcy Code replaces the common law presumption of access with an alternative framework. *See, e.g.*, *In re ESML Holdings Inc*, 135 F.4th 80, 96 (3d Cir. 2025) (collecting cases). That statute clearly and unambiguously reverses the presumption, providing: "*the bankruptcy court shall . . . protect an entity* with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1) (emphasis added); *see also ESML*, 135 F.4th at 95–96.

Congress did the opposite here: it clearly and unambiguously confirmed the court's authority to disclose court records.

### 2. Section 1516a Does Not Restrict Courts to Protective Order Access.

Notwithstanding the statute's text, the Commission argues section 1516a(b)(2)(B) allows courts to disclose material designated confidential only under terms "contained in a protective order." Petition 11.

The basis for that interpretation is one sentence in the Senate Report accompanying the Trade Agreements Act of 1979. *See id.* That sentence reads: "Special provision would be made for preserving the confidential or privileged

status of any materials contained in this record, including, where the court determines it would be appropriate, the disclosure of the privileged or confidential material only under the terms of a protective order." S. Rep. 96-249 at 248 (July 17, 1979).

This sentence merely says the court could use a protective order to preserve confidentiality. Rather than require protective orders, it confirms their availability depends on whether "the court determines it would be appropriate." *Id*. As the CIT concluded, "this sentence further emphasizes that it is the Court, and not the Commission, that determines the treatment of confidential information." Appx33 n.5.[1]

### 3. Section 1516a Preserves Court Authority over Access.

The Senate Report accompanying amendments in the Omnibus Act of 1987 confirms section 1516a preserves court authority over access.

Some background is helpful: In 1987, Congress amended the Tariff Act partly to address "[t]he Commission's practice of not releasing information under protective order." S. 100-71 at 112 (June 12, 1987). Congress "[wa]s concerned that the ITC's practice creates difficulties for parties to ITC investigations" because they "lack the very data that are essential for them to represent their cases effectively." *Id.* To address this problem, Congress changed

---

[1] Appendix citations are to the appendix filed with the Commission's Petition for Mandamus.

the law to (1) require the Commission provide protective order access to parties during investigations and (2) allow the court to order the Commission to provide such access. *See id.* at 111–14; 19 U.S.C. § 1677f(c)(1)(A) & *id.* § 1677f(c)(2).

In discussing the rationale for these amendments, the Senate Report reveals the CIT was regularly challenging the Commission's designations and releasing information designated confidential. It says: "The Commission's practice of not releasing information under protective order is particularly curious in light of the fact that, in appeals of Commission determinations, the Court of International Trade, with rare exceptions ordinarily releases the same information to counsel for the parties, usually with the Commission's consent." S. 100-71 at 112.

If the Commission's interpretation were correct, the CIT's practice would have violated 19 U.S.C. § 1516a(b)(2)(B). The record proves otherwise. Rather than criticize the CIT's defiance, Congress praised its approach and expanded its authority, explaining that "the administrative process would be greatly improved if the parties to an investigation who request protective order access be given it in a timely manner that enables them to use the information effectively." *Id.* at 112; *see also* 19 U.S.C. § 1677f(c)(2).

The 1987 amendments and accompanying Senate Report demonstrate that court authority over access not only survived the enactment of § 1516a, but

expanded as courts used that authority to challenge the Commission's designations.

## C. The CIT Correctly Upheld the Presumption of Public Access.

### 1. Overcoming the Presumption of Access Requires a Compelling Showing of Harm from Disclosure.

When the strong presumption of access applies, "'only the most compelling showing can justify' limitations" on disclosure. *Cal. Steel*, 474 F. Supp. 3d at 1356 (quoting *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011)); *see also DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369–70 (Fed. Cir. 2021) ("The law in this regard is substantially the same across circuits: the parties seeking confidentiality must present a strong justification to overcome the presumption of public access.") (citations omitted).

To meet this burden, the proponent of sealing "must establish the existence of harm flowing from the disclosure of such information." *DePuy*, 990 F.3d at 1372. Claims of harm must be "supported by specific factual findings." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013). Conclusory assertions do not suffice. *See, e.g.*, *Uniloc*, 964 F.3d at 1359–60 (affirming denial of sealing request supported by conclusory assertions); *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 678 (3d Cir. 2019) ("[B]road, vague, and conclusory allegations of harm . . . are, standing

alone, insufficient to overcome the presumption of public access.").

## 2. No Compelling Reasons for Secrecy Have Been Shown.

### a. Most of the Information at Issue Is Publicly Available.

Because most of the information at issue is publicly available, *see* Appx34-41; Appx43; Appx46, no compelling reasons for sealing have been—or could be—shown.

Courts do not seal publicly available information because once "information is made publicly available, it cannot be made secret again." *Apple,* 727 F.3d at 1220 (citations omitted); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("Once [information] is public, it necessarily remains public."); *Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016) ("Public disclosure cannot be undone."); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.,* 261 F.Supp.2d 1002, 1008 (N.D.Ill. 2003) (Posner, J., sitting by designation) (refusing to redact previously disclosed information).

The Commission contends its approach is acceptable because it could introduce information via public sources instead of the questionnaires on which it relies. *See* Reply 11. But the ability to curate the record to obscure the actual basis for its determinations is not a virtue—it is precisely why the Commission's practice undermines public oversight and judicial review. It does not justify sealing publicly available information.

The Commission overlooks the serious dangers of designating public information confidential. Restricting access to information that is already public cannot prevent its disclosure, but can chill its lawful dissemination. For example, redacting portions of the already-published opinion on appeal, after it has been widely accessed, would make sharing or discussing the full opinion a violation of law. Sealing such information creates a pervasive, yet pointless, threat of liability.

### b. There Is No Dispute that the CIT's Characterizations Are Non-Confidential.

The CIT soundly exercised its discretion in refusing to seal "general characterizations [that] do not reveal the specific operations of any one company, or . . . are sufficiently anodyne to pose no risk of competitive harm." Appx41 (citations omitted).

The companies that submitted the information characterized by the CIT do not claim the characterizations are confidential or allege their disclosure would cause harm. *See* Appx41 ("Mosaic 'does not consider this information to be confidential.'"); Appx42 ("Simplot 'defers to the Commission's judgment on whether this general characterization' must remain confidential but offers no suggestion that Simplot risks competitive harm if the statement is made public."); *id.* ("Mosaic . . . concedes that the nonnumerical summary of the

information in the Remand Results is sufficiently broad so as not to be confidential."); *id.* ("No other domestic producer claims it would suffer harm from the release of this information.") (citation omitted).

### c. There Is No Showing of Harm from the Disclosure of Stale Information.

The same is true of the CIT's refusal to seal stale information for which "no party allege[d] any specific competitive harm." Appx46.

It is well-established that the passage of time reduces the likelihood of harm from the disclosure of business information. *See, e.g.*, *Dawson v. Merck & Co.*, No. 112CV1876BMCPK, 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021) ("Stale business records cannot support the necessary finding of harm, and therefore 'cannot overcome the public's strong interest in disclosure.'") (citations omitted); *Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, No. CV 15-1059, 2017 WL 11573695, at *3 (D. Del. Aug. 28, 2017) ("The presence of stale information weighs against finding a competitive disadvantage will be created by disclosure."); *AmerGen Energy Co., LLC by & through Exelon Generation Co., LLC v. United States*, 115 Fed. Cl. 132, 141 (2014) ("[I]nformation may lose its confidential nature once it becomes stale.") (citations omitted).

Accordingly, courts routinely deny requests to seal business information which is three to nine years old, as the CIT did here. *See Zavala v. Wal-Mart*

*Corp.*, No. CIV.A.03-5309 JAG, 2007 WL 2688934, at *4 D.N.J. Sept. 12, 2007) (finding no risk of harm from disclosure of three-year-old documents); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1136 (D.C. Cir. 1987) (affirming decision to release information where the "data at issue, which were by then four to seven years old, were stale"); *OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1241 (11th Cir. 2022) ("[I]t is unclear how the publication today of a six-year-old tidbit about the parties' now-terminated relationship could harm a legitimate interest."). The CIT's decision is a sound exercise of discretion.

### d. The Commission's Concerns Are Not Compelling Reasons to Seal Business Information.

The Commission primarily alleges harm to its ability to obtain information from respondents in future investigations. *See* Petition 10-11; Reply 2 & 5. Because the information at issue is business information, *see* Petition 2, the Commission's concerns cannot overcome the presumption of access.

The Supreme Court and this Court have held that sealing business information in judicial records requires "some threatened harm to 'a litigant's competitive standing.'" *DePuy*, 990 F.3d at 1372 (quoting *Nixon*, 435 U.S. at 598 and citing *Carrizosa v. Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251–52 (11th Cir. 2020) (appellants were not entitled to confidential treatment "without a distinct concrete harm justifying good cause")). As discussed above, no

competitive harm to the businesses whose information is at issue has been shown. The Commission's concerns are no substitute.

Even in FOIA cases, where the Commission's concerns could be relevant, such claims are "inherently weak where, as here, the agency has secured the information under compulsion." *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999) (citation omitted); *see also People for the Ethical Treatment of Animals v. United States Dep't of Health & Hum. Servs.*, 201 F. Supp. 3d 26, 47–48 (D.D.C. 2016), a*ff'd*, 901 F.3d 343 (D.C. Cir. 2018), and *aff'd*, 901 F.3d 343 (D.C. Cir. 2018) (*citing id.*).

The Commission admits the information here was obtained under compulsion via "mandatory Commission-issued questionnaires." Reply 7; *see also U.S. Int'l Trade Comm'n v. E. & J. Gallo Winery*, 637 F. Supp. 1262, 1266 (D.D.C. 1985) ("19 U.S.C. § 1333(a) . . . authorizes ITC to obtain by subpoena the production of documentary evidence . . . related to its inquiries. *See* 19 C.F.R. § 207.8 (questionnaires as subpoenas)."). The Commission's power to obtain such information by compulsion undermines its rationale for secrecy.

*Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986) does not suggest otherwise. *See* Petition 19. *Akzo* is about the propriety of a protective order prohibiting disclosure to in-house counsel. *See id.* at 1482–84. It does not suggest the Commission's concerns are sufficiently compelling to

overcome the strong presumption of access. It does not even speak to the Commission's concerns about gathering information in Title VII investigations such as this: *Akzo* was a Section 337 investigation about patent infringement. *See id.* at 1475. The Commission's role and authority are substantially different in Section 337 and Title VII investigations. *See generally* Scott F. Kieff, *Private Antitrust at the U.S. International Trade Commission*, 14 J. OF COMPETITION L. & ECONS. 1, 46–64 (Mar. 2018).

Tellingly, Congress refused to restrict access to records of Commission investigations based on the concerns raised here. When Congress amended the Tariff Act in 1987, it took "into account the Commission's legitimate concern that the availability under protective order of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily." S. Rep. 100-71 (June 12, 1987) at 113.[2] While legitimate, that concern did *not* convince Congress to restrict access because "the Commission possesses effective statutory authority to deal with the refusal of firms to provide information." *Id.* To ensure compliance, Congress authorized the Commission to use subpoenas, adverse inferences, and sanctions. *See id.* at 113–14. But it refused to restrict access on that basis.

---

[2] The Commission cites this quotation, but fails to mention that Congress acknowledged this concern—and then rejected it. *Compare* Petition 18 *with* S. Rep. 100-71 at 113–14.

The Commission's concern that it "cannot comply with the CIT's order without running afoul of section 1677f(b)(2)," Reply 15, is similarly unavailing. Section 1677f describes the procedure for modifying "unwarranted designations." 19 U.S.C. § 1677f(b)(2). The CIT's decision does not implicate that procedure or require any action by the Commission. If this Court affirms, the CIT must release its sealed opinion; the Commission's unwarranted designations can stand.

## III. The Public's Interest in Access Confirms the Presumption Must Stand.

### A. Access Is Necessary to Understand the CIT's Decision.

Even if cognizable allegations of harm had been made, the public's overwhelming interest in access would require upholding the presumption.

Public access to the CIT's opinion is essential to ensure transparency, accountability, and public understanding of judicial and agency processes. Without access, the public cannot meaningfully evaluate the basis for the court's ruling, the reasoning behind the Commission's determination, or the propriety of the proceedings. In a democracy, citizens must be able to observe how courts interpret and apply the law, particularly when reviewing public agencies. *See, e.g.*, *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) ("[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself

with his own eyes as to the mode in which a public duty is performed."). This access is vital not only for fostering informed public discourse and decision-making, but also for maintaining trust and confidence in the courts and the broader system of government. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 571 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

### B. Access Is Necessary to Observe the Commission's Designation Practices.

The public's interest is especially compelling because access is necessary for the public to see exactly what the Commission is fighting to keep sealed—and thus to gauge the true scope and impact of its designation practices. If access is denied here, this opportunity may never come again.

The Commission's designation methods are inherently opaque. It designates entire questionnaires confidential, so the public never sees them. Because the Commission does not properly request redactions, there is no court record identifying what is withheld. Moreover, improper designations may be masked by the agency's substitution of public sources for questionnaire responses. *See* Reply 11. These tactics not only withhold the underlying information but also conceal the extent of the Commission's secrecy, preventing the public from assessing the reach or propriety of its confidentiality claims.

This case is exceptional because, thanks to Judge Vaden's scrutiny and now this Court's review, the public has its first glimpse of what the Commission has apparently been doing for years. By emphasizing the longevity of its practices, *see* Reply 2, the Commission underscores how long it has kept the public in the dark.

The information already revealed in these appeals confirms the need for full public access to the record, including the specific redactions the Commission seeks to maintain. That access is essential not only to understand and evaluate the CIT's opinions, but also to see and evaluate the full extent and effect of the Commission's long-concealed practices.

### C. The Public Needs Access to Evaluate Potential Abuse of the Commission's Sanctioning Power.

The Commission's practice of designating entire questionnaires confidential—including large amounts of publicly available information—is deeply concerning given the agency's broad power to impose sanctions for violations of its protective orders. When public information is swept into confidential designations, signatories to those orders become highly vulnerable to sanctions for disclosures that should not be considered unauthorized.

This risk is especially acute because "records of Commission investigations of alleged APO [administrative protective order] breaches in antidumping and countervailing duty cases . . . are not publicly available and are

exempt from disclosure under the Freedom of Information Act." 88 Fed. Reg. 85306, (Dec. 7, 2023) (citations omitted).

The limited, anonymized summaries that are publicly available reveal that the public availability of the disclosed information is frequently contested—and that the Commission often rejects such defenses. For example, two of eight published case summaries state that public availability defenses were raised, but rejected because "the Commission found that the attorney had not provided evidence sufficient to demonstrate that the CBI was available publicly at the time of the breach." *Id.* at 85307. No further details are provided. *See id.*

In light of the secrecy surrounding the Commission's enforcement of protective orders and imposition of sanctions, access to the CIT's opinions is imperative for the public to assess the potential for abuse of the Commission's sanctioning authority.

## CONCLUSION

For the foregoing reasons, the CIT's decisions should be affirmed.


August 11, 2025                           Respectfully submitted,


                                By:     /s/ Alex H. Moss
                                        1246 Huntington Drive
                                        South Pasadena, CA 91030
                                        Tel: (818) 281-2191
                                        alex@piplius.org

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>24-1566</u>

**Short Case Caption:** <u>In Re: United States</u>

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>3849</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/11/2025</u>

Signature: <u>/s/ Alex H. Moss</u>

Name: <u>Alex H. Moss</u>