**Nos. 2024-1566, 2025-127**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**In re UNITED STATES,**

*Defendant-Appellant,*

Appeal from the United States Court of International Trade
in No. 1:21-cv-00288-SAV, Judge Stephen A. Vaden

\* \* \* \* \*

**In re UNITED STATES,**

*Petitioner.*

On Petition for Writ of Mandamus to the United States Court
of International Trade in No. 1:21-cv-00288-SAV, Judge Stephen A. Vaden

## DEFENDANT-APPELLANT AND PETITIONER'S REPLY TO BRIEF OF COURT-APPOINTED *AMICUS CURIAE*

**MARGARET D. MACDONALD**
General Counsel
Telephone (202) 205-3061

**KARL S. VON SCHRILTZ**
Assistant General Counsel
  for Litigation
Telephone (202) 205-3096

**COURTNEY S. McNAMARA**
**L. MISHA PREHEIM**
**ELIZABETH SPECK**
Attorney Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-3095

Dated: September 3, 2025

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES.......................................................................iv

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................2

I.     The Statute, And Not the Common Law Right of Access, Applies ...........................................................................................2

II.    *Amicus* Misinterprets the Statute ..................................................3

    A.    The Statute Requires Courts to Preserve the Confidential Status of Materials Designated as BPI Before the Commission...........................................................................3

    B.    The Statute and Legislative History Make Clear that Courts May Only Disclose Information Designated as BPI Under a Protective Order That Preserves Its Protected Status .....................................................................5

    C.    19 U.S.C. §1516a(b)(2)(B) Does Not Empower the CIT to Challenge the Commission's Designations of BPI .........................8

III.    None of *Amicus Curiae*'s Purported Justifications for the CIT's Violation of the Statute Withstand Scrutiny ...................................10

    A.    The Commission Is Harmed by the CIT's Nonconsensual Disclosure of BPI in its Opinions........................................11

    B.    *Amicus* is Wrong that Most of the Information at Issue is Publicly Available................................................................13

    C.    The CIT Abused Its Discretion in Substituting Its Opinion of BPI Designations for that of the Commission Concerning "General Characterizations"...........................................15

    D.    The CIT Has Ordered the Commission to Violate the Law ............................................................................16

# TABLE OF CONTENTS (cont'd)

Page(s)

    E.    The Statutory Framework Does Not Provide an
Expiration Date for BPI Protection ...................................................... 16

    F.    Public Interest Does Not Justify Disclosure of BPI ............................ 16

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Akzo N.V. v. ITC,*
    808 F.2d 1471 (Fed. Cir. 1986) ....................................................................11, 12

*Ctr. for Nat'l Sec. Studies v. DOJ,*
    331 F.3d 918 (D.C. Cir. 2003)............................................................................3

*In re ESML Holdings Inc.,*
    135 F.4th 80 (3d Cir. 2025) ........................................................................5, 9, 10

*Isbrandtsen Co. v. Johnson,*
    343 U.S. 779 (1952)..........................................................................................4

*Metlife, Inc. v. Fin. Stability Oversight Council,*
    865 F. 3d 661 (D.C. Cir. 2017) ........................................................................5

*Nixon v.Warner Commc'ns, Inc.,*
    435 U.S. 589 (1978) .........................................................................................4

*Qwest Commc'ns Int'l, Inc. v. FCC,*
    229 F.3d 1172 (D.C. Cir. 2000)........................................................................14

*In re United States,*
    669 F.3d 1333 (Fed. Cir. 2012) .......................................................................12

**Statutes**

11 U.S.C §107(b) .......................................................................................................9

19 U.S.C. §1516a ...................................................................................................3, 7

19 U.S.C. §1516a(b) ..................................................................................................3

19 U.S.C. §1516a(b)(2)(B) ..............................................................................3, 4, 6, 8, 9

19 U.S.C. §1677f(a)(4) ..............................................................................................9

19 U.S.C. §1677f(b)(1)(A)..........................................................................................13

19 U.S.C. §1677f(b)(2) ..............................................................................................16

iv

**Statutes (cont'd)**                                                    **Page(s)**

19 U.S.C. §1677f(c)(1) ................................................................8

19 U.S.C. §1677f(c)(2) ................................................................8

**Legislative History**

S. Rep. No. 96-249 (July 17, 1979) .....................................6, 7, 8

S. Rep. No. 100-71 (June 12, 1987).......................................7, 11

**Federal Register Notices**

88 Fed. Reg. 85,303 (Dec. 7, 2023) .........................................18

## INTRODUCTION

These matters involve two distinct cases with overlapping legal issues that threaten the International Trade Commission's ("Commission" or "ITC") ability to fulfill its duties within the strict, Congressionally-mandated deadlines. The Commission recounted the history and procedural posture of these cases in its appeal, *In re United States*, No. 24-1556 ("*CVB*") and its Petition for a Writ of Mandamus in *In re United States*, No. 25-127 ("*OCP*"). Pet. 1-7 (Dkt.2).

In accordance with this Court's instructions, the Commission filed a motion with the Court of International Trade ("CIT") in *OCP* (CIT No. 21-219) requesting that the court issue a public version of its merits decision with limited redactions to protect business proprietary information ("BPI") concerning certain firms' individual operations. APPX085-101. Although the CIT temporarily granted the motion, it otherwise declined to redact the information. APPX102-127.

The denial of the Commission's motion is another example of how the CIT has, in the Commission's view, ignored the statutory requirement to preserve the confidentiality of information designated as BPI. As the Commission's prior briefs explained, the court's actions have upended Congress's carefully crafted framework, the Commission's regulations and long-standing approach to collecting and protecting BPI, and the reasonable expectations of firms that supply BPI

essential to the Commission's antidumping and countervailing duty ("AD/CVD") determinations.

Amicus Curiae ignores these valid interests and repeats arguments that have been raised previously and which the Commission has already addressed. For example, Amicus erroneously asserts that the common law right of public access trumps the statute's language and legislative intent. And although Amicus purports to balance competing interests, it ignores the harm to both the Commission and individual firms that will result if this Court affirms the CIT's approach. Amicus resorts to unsubstantiated claims that the Commission seeks to "obscure" the basis for its determinations. Resp. 9 (Dkt.52). Nothing could be further from the truth. Notably, Amicus overlooks that the bar associations whose members practice before the Commission, and whose clients' interests are implicated, fully support the Commission's position.

## ARGUMENT

## I.    The Statute, And Not the Common Law Right of Access, Applies

As discussed in the Commission's prior briefs, the Commission agrees that, ordinarily, there is a common law right of access to judicial proceedings. But Congress may supersede this common law right by statute and has done so here. See ITC CVB Br. 36-41 (Dkt.20); ITC CVB Opp. to Mot. for Access 6-10 (Dkt.35); ITC CVB Reply to Amicus 15-18, 25-28 (Dkt.46); Pet. 8-12; Pet. Reply 11-14

(Dkt.8); s*ee, e.g., Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 937 (D.C. Cir. 2003) (finding that a "carefully calibrated statutory scheme" . . . "preempts any preexisting common law right"). *Amicus*'s arguments to the contrary are unavailing.

## II.      *Amicus* Misinterprets the Statute

### D.      The Statute Requires Courts to Preserve the Confidential Status of Materials Designated as BPI Before the Commission

*Amicus* argues, incorrectly, that "{t}he requirement that confidential status be preserved in the administrative record does not constrain the court's authority over access to court records." Resp. 4-5.

The statute's first sentence – which states "{t}he confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section" – directly undercuts this assertion. 19 U.S.C. §1516a(b)(2)(B). *Amicus* also overlooks that §1516a provides for judicial review of the Commission's AD/CVD determinations and §1516a(b) sets forth the standards of review. Accordingly, the requirement to preserve the confidential status of BPI "in any action under this section" unquestionably applies to the CIT and any proceedings before it involving review of Commission determinations.

Next, *Amicus* incorrectly argues that this provision's second sentence, permitting a court to disclose information designated as BPI "under such terms and conditions as it may order," demonstrates Congressional intent that the common

3

law right of access, and not the requirement in the first sentence, apply to judicial proceedings. This principle, however, "does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952). Indeed, in *Nixon v. Warner Communications, Inc.*, the Supreme Court rejected that the common law right applies when it "might frustrate the achievement of the legislative goals of orderly processing and protection of the rights of all affected persons." 435 U.S. 589, 606 (1978).

Amicus's misreading of the statute is similarly contrary to the text and would "defeat {the} obvious legislative purpose." *Isbrandtsen*, 343 U.S. at 783. Again, the statutory framework strikes a balance between protecting the rights of the firms that supply information that is essential to Commission decision-making, through the robust protection of information designated as BPI, and the due process rights of the parties appearing before the Commission, by permitting disclosure of BPI to interested parties' representatives under a protective order. And Congress has mandated that the protection afforded to such materials in Commission proceedings continues in subsequent judicial proceedings. Congress has plainly preempted the common law right of access.

Similarly flawed are *Amicus's* attempts to analogize the statutory text here to statutes in other cases in which courts have declined to adopt an "atextual" reading

to abrogate the common law right of access. Resp. 4-5. As the Commission

explained above and in prior briefs, the Commission's interpretation is in

accordance with the statute's plain text. *See* ITC *CVB* Br. 23-29, 36-41; ITC *CVB*

Opp. to Mot. for Access 6-10; ITC *CVB* Reply to *Amicus* 8-14; Pet. 8-12; Pet.

Reply 11-14. Thus, the statutory scheme here is unlike the statute at issue in

*Metlife, Inc. v. Financial Stability Oversight Council*, which the court found failed

either to speak "directly to" the issue of confidentiality or *"even mention"* the

courts. 865 F. 3d 661, 669 (D.C. Cir. 2017) (citation omitted)*.*

The remaining case that *Amicus* cites supports the Commission's position.

Here, as in the Bankruptcy Code at issue in *In re ESML Holdings Inc.*, 135 F.4th

80, 96 (3d Cir. 2025), Congress has used mandatory language – "shall preserve" –

to convey that courts must protect information designated as BPI before the

Commission. In *ESML*, the court further found that "{t}he statute thus eliminates

the balancing of public and private interests required by the common law rule

{because} Congress has struck its own balance by which the courts must abide."

*Id.* (quotation omitted). Congress has likewise struck its intended balance here.

**E.    The Statute and Legislative History Make Clear that Courts May Only Disclose Information Designated as BPI Under a Protective Order That Preserves Its Protected Status**

*Amicus* mistakenly claims that the only basis for the Commission's reading

of the statute as permitting the CIT's disclosure of information designated as BPI

only under terms "contained in a protective order" is "one sentence in the Senate Report accompanying the Trade Agreements Act of 1979." Resp. 5-6.

*Amicus* ignores the statute itself. As discussed above, §1516a(b)(2)(B) contains two sentences. The second sentence must be read in conjunction with the first, meaning that material designated as BPI may be disclosed by the court under such terms and conditions as it may order but only in accordance with the first sentence's mandate – that is, pursuant to a protective order preserving the confidential status.

The legislative history confirms that Congress intended for courts to disclose material designated as BPI only under the terms of a protective order. As explained in the Senate Report, "{s}pecial provision would be made in subsection (b)(2)(B) for preserving the confidential or privileged status of any materials contained in this record, including, where the court determines it would be appropriate, the disclosure of the privileged or confidential material *only* under the terms of a protective order." S. Rep. No. 96-249 at 248 (July 17, 1979) (emphasis added).

*Amicus* misreads this sentence, claiming that "{r}ather than require protective orders, it confirms their availability depends on whether 'the court determines it would be appropriate.'" Resp. 6. But the Senate Report shows that Congress intended for the court's discretion as to what is "appropriate" to apply

only to *whether* confidential materials should be disclosed not *how* they may

disclosed.  With respect to the latter, Congress explained that the statute provides

no such discretion – any disclosure of material designated as BPI must "preserv{e}

the confidential or privileged status of any materials contained in this record;" *i.e.,*

"*only* under the terms of a protective order."  S. Rep. No. 96-249 at 248 (emphasis

added).

In claiming that the above sentence is the Commission's only support,

*Amicus* ignores not only the statute itself but the broader statutory framework and

legislative history.  *Amicus*'s purported description of the "background" of §1516a

undercuts its argument that the above-cited legislative history is an outlier.  Resp.

6-7.  As *Amicus* correctly notes, the Senate Finance Committee found agency

proceedings would be improved "if parties to an investigation who request

*protective order access* be given it in a timely manner."  S. Rep. 100-71 at 112

(June 12, 1987) (emphasis added).  The Committee recognized that AD/CVD

investigations involve information from a variety of sources and explained that

disclosure of such information under a protective order "provides to the parties

before either agency full access to all meaningful information that will assist in

their preparation of a case."  *Id.*  The Committee further explained that "{t}he

persons to whom access to confidential information may be granted under

protective order are counsel or other representatives of the parties who require access in order to assist in their preparation of the case…." *Id.* at 113.

Congress thus established a framework that provides robust protection to information designated as BPI, while balancing this protection with the rights of parties appearing before the Commission, by providing for the limited disclosure of such information under a protective order. *See* 19 U.S.C. §1677f(c)(1). Congress also articulated a specific role for the courts in any disputes regarding access to BPI: if disclosure of information under an administrative protective order ("APO") is denied, a party may seek such disclosure under a protective order from the court. 19 U.S.C. §1677f(c)(2).

**F.      19 U.S.C. §1516a(b)(2)(B) Does Not Empower the CIT to Challenge the Commission's Designations of BPI**

*Amicus* claims that §1516a(b)(2)(B) establishes that the courts possess the "authority to challenge the Commission's designations." Resp. 8. However, *Amicus* fails to point to anything in the statute or legislative history that supports this claim.

Moreover, the conspicuous lack of any statutory provision for the CIT to engage in such an exercise is telling, given the comprehensive framework established by Congress. Indeed, this absence stands in contrast with 19 U.S.C. §1677f(c)(2), in which Congress established a detailed process for a party to challenge the Commission's denial of access to BPI under an APO during

8

Commission proceedings and seek disclosure of such BPI under a protective order from the CIT. Congress could have established a similar process for the CIT to entertain challenges to the Commission's BPI designations but did not.

The absence of such statutory authorization also contrasts with other statutory provisions that provide such authority. As discussed above, the Bankruptcy Code and §1516a(b)(2)(B) use "shall" to direct courts to protect certain information. In *ESML*, however, the court held that the bankruptcy court must evaluate any requests to seal records considering the categories in the statutory provisions that follow. *See id.* at 95-97 (citing (citing 11 U.S.C §§107(b)(1) & (2)). In cases involving judicial review based on the Commission's record, however, BPI is already designated as confidential in the record. Moreover, the statutory provisions describing the categories of information that constitute BPI apply to the Commission, not the courts, and the statutory provisions that apply to courts state only that BPI designations before the Commission shall be preserved. *Contrast* 19 U.S.C. §1677f(a)(4) *with* 19 U.S.C. §1516a(b)(2)(B). Crucially, unlike here, Congress specifically provided that under the Bankruptcy Code, a court may act upon its own motion. *See* 11 U.S.C §107(b). Here, the comprehensive statutory framework provides no such authorization for the CIT to act *sua sponte*, indicating that the CIT has no such authority.

This does not mean that the Commission operates in a shroud of secrecy. Contrary to *Amicus*'s allegation, the Commission does not "curate the record to obscure the actual basis for its determinations." Resp. 9. Critically, no one – neither the CIT nor either of its supporting *Amici* nor any of the parties to either the *CVB* or *OCP* proceedings – contends that the Commission's underlying public determinations, which redact designated BPI in accordance with the law, are rendered unintelligible by those redactions or that the Commission's reasoning and decision-making is not readily understood from its publications.

## III. None of *Amicus Curiae's* Purported Justifications for the CIT's Violation of the Statute Withstand Scrutiny

As discussed above, the statute preempts the common law right of public access. Accordingly, neither the Commission nor this Court need engage in any balancing or otherwise overcome any presumption that the common law right of public access applies. *See ESML*, 135 F.4th at 96. Even assuming that it did, *Amicus* fails to articulate a public interest that justifies upending Congress's carefully crafted, comprehensive statutory framework, irreparably harming the Commission's ability to perform its statutorily mandated duties, and disregarding the reasonable expectations of the firms that provide BPI with the understanding that it will be afforded robust protection before the Commission and the courts.

### G.    The Commission Is Harmed by the CIT's Nonconsensual Disclosure of BPI in its Opinions

*Amicus*'s argument that the Commission's concerns cannot overcome the presumption of access also overlooks the specific and irreparable harm that the Commission articulated in its prior submissions.  *See e.g.*, Pet. 7, 18-21; Pet. Reply at 2, 4-7.

Claiming that Congress rejected Commission concerns and "refused to restrict access," *Amicus* again misreads the legislative history.  Resp. 14.  *Amicus* overlooks that Congress acknowledged "the {Commission}'s legitimate concern that the availability under protective order of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily."  S. Rep. No. 100-71 at 113-14.  Congress recognized that firms were so sensitive to the risk that their BPI would be disclosed that they were reluctant to provide it even under a protective order.  The public disclosure of BPI, outside of the protection of a protective order, would obviously have an even greater chilling effect.

Furthermore, this Court recognized in *Akzo* that "{d}isclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's factfinding processes."  *Akzo N.V. v. ITC*, 808 F.2d 1471, 1483 (Fed. Cir. 1986) (endorsing the Commission's "conservative position on the side of optimum

shielding of business information"). While *Amicus* correctly notes that *Akzo* involved a Section 337 investigation, which differs from AD/CVD investigations, the chilling effect that disclosure of BPI to a competitor has on voluntary participation in Commission proceedings is the same.

*Amicus* seemingly dismisses the legitimate harm that the unlawful disclosure of BPI would cause the Commission by arguing that "the information at issue is business information," and that "{t}he Commission's concerns are no substitute" for a showing that the information's disclosure would harm the businesses that reported the information. Resp. 12-13. Contrary to this argument, however, in *In re United States*, 669 F.3d 1333, 1336 (Fed. Cir. 2012), this Court issued a writ of mandamus to prevent the wrongful exposure of confidential third-party tax documents, finding such documents to be integral to the IRS's performance of its duties. Similarly, here, the Commission's ability to conduct its investigations within tight statutory deadlines "hinges on the willingness" of industry participants to supply confidential information. *Id.*

Nor does the mandatory nature of the Commission's questionnaires undermine its rationale for protecting BPI, as *Amicus* argues. Resp. 13. It would be impracticable, if not impossible, for the Commission to issue subpoenas and seek to enforce them in court to compel questionnaire responses from each of the innumerable firms whose BPI is required for a typical investigation within the tight

statutory deadlines set by Congress. Thus, as this Court and Congress have

recognized, and *Amici* CITBA and ITCTLA confirmed, the Commission's concerns

are legitimate and in no way undermined because they involve "business

information."

### H. *Amicus* is Wrong that Most of the Information at Issue is Publicly Available

*Amicus* argues, unpersuasively, that the CIT did not abuse its discretion

because "no competitive harm to the businesses whose information is at issue has

been shown" and that "most of the information is publicly available." Resp. 9-10,

12-13. These assertions do not withstand scrutiny.

The information cited by *Amicus* is some of the same information that the

CIT concluded in *OCP*, citing its own extra-record research, was publicly available

and not entitled to continued preservation as BPI. APPX34-41. To the extent that

the statements by two domestic producers quoted by *Amicus* represent consent to

the public disclosure of their own BPI, Resp. 10, the Commission has consistently

recognized that parties may consent to the public disclosure of their own BPI under

19 U.S.C. §1677f(b)(1)(A). *See, e.g.*, Pet. Reply 8. It is thus that consent, and not

the CIT's extra-record research, that provides the basis for such disclosures.

However, these parties did not, and cannot, consent to the public disclosure of

other parties' BPI.

Furthermore, the information to which *Amicus* cites in no way constitutes the "information at issue" in these proceedings. *Amicus* overlooks that *OCP* involved different investigations and an entirely different record than *CVB*. And even within *OCP*, the information cited does not constitute "the information at issue" in the petition. The CIT ordered the Commission to withdraw additional BPI designations that it has found unlawful, including those of company-specific questionnaires, and to disclose such information in a "corrected" public record. APPX79. By ordering the Commission to disclose such information, or by itself disclosing such information, absent the appropriate consent, the CIT disregards the statute and undermines the Commission's longstanding commitment to protect BPI. Firms are entitled to rely on their reasonable expectation of the consistent proprietary treatment of such information. *See Qwest Commc'ns Int'l, Inc. v. FCC*, 229 F.3d 1172, 1184 (D.C. Cir. 2000).

To the extent that other information referenced by *Amicus* and discussed by the CIT was publicly discussed elsewhere in the Commission's opinion or available on the public record, the Commission agrees that such public information can be discussed publicly in judicial proceedings, citing to the public record. Again, such information is public by virtue of its inclusion on the public record before the Commission, not the CIT's extra-record research and opinions, and the

CIT abused its discretion when it ordered the Commission to issue a "corrected" record making certain information designated as BPI public.

Finally, *Amicus* mistakenly argues that the Commission has "overlook{ed} the serious dangers of designating public information confidential" because restricting access to information that is already public could only chill its lawful dissemination by allegedly creating a threat of liability. Resp. 10. *Amicus*, apparently discussing the *CVB* case, misstates the relief that the Commission seeks. The Commission is not seeking to impose liability with respect to that opinion. Rather, the Commission only seeks to "modify the CIT's final judgment for the limited purpose of reversing the CIT's BPI Denial Decision." ITC *CVB* Br. 47.

I.     **The CIT Abused Its Discretion in Substituting Its Opinion of BPI Designations for that of the Commission Concerning "General Characterizations"**

*Amicus* also incorrectly argues that the CIT "exercised sound discretion" in concluding that what it viewed to be "general characterizations" of information is not entitled to continued treatment as BPI. Resp. 10-11. Again, as discussed above, the statute does not empower the CIT to second-guess the Commission's BPI designations. To the extent that *Amicus* again relies on the consent of the two domestic producers to public disclosure of their own information, Resp. 10-11, that consent does not extend to other parties nor obligate the Commission to "correct" its record.

**J.     The CIT Has Ordered the Commission to Violate the Law**

Failing to appreciate a critical aspect of the Commission's Petition, *Amicus*

incorrectly states that "{t}he CIT's decision does not implicate th{e} procedure {in

19 U.S.C. §1677f(b)(2)} or require any action by the Commission."  Resp. 15.  To

the contrary, the CIT has ordered the Commission to withdraw prior BPI

designations and to disclose such information in a "corrected" public record.

Appx79.  As the Commission has explained, it cannot comply with the CIT's order

without violating the procedures under 19 U.S.C. §1677f(b)(2).  *See, e.g.,* Pet.

Reply 17; ITC *CVB* Reply 14-15.

**K.     The Statutory Framework Does Not Provide an Expiration Date
        for BPI Protection**

Equally unavailing is *Amicus's* assertion that the information was not

entitled to BPI protection because it was "stale."  Resp. 11-12.  Congress did not

establish any requirement or procedure to re-evaluate the confidential nature of the

information following the record's closure or the passage of time.

**L.     Public Interest Does Not Justify Disclosure of BPI**

Amicus Curiae offers a number of brief, conclusory arguments regarding the

alleged public interest that in its view justify the CIT's disclosure of BPI in these

proceedings.  None withstand scrutiny.

First, *Amicus* wrongly argues that access to BPI is necessary to understand

the CIT's decision.  Resp. 15-16.  Overlooking that these matters involve two

separate cases before the CIT, *Amicus* neither cites a specific CIT opinion nor articulates what aspect of any such opinion is rendered unclear by the preservation of BPI. Moreover, *Amicus*'s claim that protecting BPI during judicial review somehow prevents the public from understanding the CIT's decisions is belied by decades of actual experience, as the Commission has previously explained. ITC *CVB* Reply 15-16.

Equally unavailing are *Amicus's* assertions that access to BPI is necessary to "observe the Commission's designation practices," claiming "the need for full public access to the record." Resp. 16-17. Such "full public access" would violate the law. Further, *Amicus* is wrong that the Commission's BPI designations are immune from any assessment of their propriety. As discussed above, representatives of interested parties have access to BPI pursuant to a protective order, but the interested parties themselves, which are likely to be competitors, do not. These interested parties and their representatives have every incentive to ensure that information in the record is made publicly available to the fullest extent permitted by law. And the representatives who have access to BPI are able to see and understand exactly what the Commission has bracketed as BPI. Further, the Commission does not "curate the record," and parties are generally afforded multiple opportunities to place information on the record, including where similar

publicly available information may have been designated as BPI in another context.

Finally, *Amicus* argues, unpersuasively, that the public needs access to BPI to evaluate potential abuses of the Commission's sanctioning power. Resp. 17-18. *Amicus* cites only one Federal Register notice, in which the Commission rejected an attorney's defense in an APO breach investigation that the information was publicly available. Resp. 17-18 (citing 88 Fed. Reg. 85303, 85306 (Dec. 7, 2023)). That involved a Section 337 matter, which *Amicus* has conceded differs from AD/CVD matters. In any event, the fact that the two *amici* bar associations, whose members include attorneys who regularly gain access to BPI under APOs and are thus subject to the Commission's sanctioning power, support the Commission's position in these proceedings shows that *Amicus's* argument should be given no weight.

## CONCLUSION

The Commission respectfully requests that this Court grant the relief sought in the *CVB* appeal and *OCP* petition.

Respectfully Submitted,

Margaret Macdonald
General Counsel

Karl Von Schriltz
Assistant General Counsel for Litigation

*/s/ Courtney S. McNamara*
Courtney S. McNamara
L. Misha Preheim
Elizabeth Speck
Attorney Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Tel: (202) 205-3095
courtney.mcnamara@usitc.gov

*Counsel for Defendant-Appellant and*
*Petitioner United States*

September 3, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the attached brief complies with the type-volume limitation and typeface requirements of Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rules 32(b)(1) and 32(b)(2). The brief has been prepared in a proportionally spaced typeface using Microsoft Office 365, in Times New Roman 14-point font. The brief contains a total of **3,888** words, obtained from the word-count function of the word-processing system, including all footnotes and citations.

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Tel: (202) 205-3095
courtney.mcnamara@usitc.gov

*Counsel for Defendant-Appellant and*
*Petitioner United States*

Dated:  September 3, 2025

*PUBLIC VERSION*

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONRABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| OCP SA., | |
| *Plaintiff*, | |
| and | |
| EUROCHEM NORTH AMERICA, CORP., | |
| *Consolidated Plaintiff*, | |
| and | |
| PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS, LTD., and KOCH FERTILIZER, LLC, | Consol. Court No. 21-00219 |
| *Plaintiff-Intervenors*, | |
| v. | |
| UNITED STATES, | |
| *Defendant*, | |
| and | |
| THE MOSAIC COMPANY AND J.R. SIMPLOT COMPANY, | |
| *Defendant-Intervenors*. | |

### DEFENDANT'S MOTION FOR ISSUANCE OF A
### PUBLIC OPINION AND FOR A ONE WEEK EXTENSION OF TIME
### TO SUBMIT THE REMAND DETERMINATION

Pursuant to Rules 6(b) and 7(b) of the Rules of the United States Court of International

Trade ("USCIT R."), defendant, the United States International Trade Commission, respectfully

requests that the Court issue a public version of the Court's April 22, 2025 opinion, ECF No. 224 ("Second Remand Opinion") that is consistent with the highlighting and double bracketing of business proprietary information ("BPI") reflected in attached Exhibit A. The Commission also respectfully requests that the Court extend by seven days the deadline for the Commission to file its second remand determination, and similarly extend the remaining deadlines in the Court's Second Remand Opinion. The Commission's second remand determination is currently due on July 21, 2025. With the requested extension, the remand determination would be due on July 28, 2025.

On June 18, 2025, undersigned counsel for the Commission contacted counsel for the parties via e-mail to obtain their position on this motion. On June 18, 2025, Patrick McLain, on behalf of defendant-intervenor J.R. Simplot Company, Stephanie Hartman, on behalf of defendant-intervenor Mosaic Company, and Melissa Brewer, on behalf of plaintiff-intervenor International Raw Materials, consented to this motion. On June 18, 2025, Jeremy Dutra, on behalf of consolidated plaintiff EuroChem North America Corporation, and Michael Jacobson, on behalf of plaintiff-intervenor, PhosAgro PJSC, stated that they take no position with respect to this motion. On June 20, 2025, James Smith, on behalf of plaintiff OCP S.A., stated that OCP S.A. consents to the motion for additional time and the release of a public version, while taking no position on the confidentiality of specific passages pertaining to the information of other parties. On June 20, 2025, Kenneth Weigel, on behalf of plaintiff-intervenor Koch Fertilizer LLC, stated that Koch Fertilizer LLC takes no position with respect to this motion.

## BACKGROUND

Prior to the Court's issuance of its Second Remand Opinion, on April 4, 2025, the Commission filed a petition for writ of mandamus with the United States Court of Appeals for

the Federal Circuit.   Petition for a Writ of Mandamus, *In re United States*, Fed. Cir. No. 25-127, ECF No. 2-1 (Apr. 7, 2025).  In the Mandamus Petition, the Commission requested that the Federal Circuit grant its request for relief from the Court's opinion and order dated March 27, 2025, ECF No. 220 ("March Opinion"), which addressed the preservation of confidentiality of information treated as BPI before the Commission and this Court.  Shortly thereafter, this Court issued the Second Remand Opinion on April 22, 2025, in which it remanded the matter to the Commission and also ordered the Commission, unless directed otherwise by the Federal Circuit, to comply with the March Opinion when determining which information deserves confidential treatment and to correct the public version of the record.  Second Remand Opinion at 50.

On April 29, 2025, the Commission filed its reply brief in support of its Mandamus Petition in which it sought, among other requests, that the Federal Circuit direct this Court to issue a public version of the Second Remand Opinion that includes any redactions proposed by the Commission and the parties.  Reply Brief, *In re United States*, Fed. Cir. No. 25-127, ECF No. 8 (Apr. 29, 2025) at 16.

Although the Second Remand Opinion remained under seal, mindful of the Court's deadline of July 21, 2025, to complete the remand proceedings, on June 4, 2025, the Commission issued a notice of remand procedures.  *Phosphate Fertilizers from Morocco and Russia*, 90 Fed. Reg. 24,411, 24,412 (ITC Jun. 10, 2025).  The notice set a deadline of June 20, 2025, for the parties to file comments "concerning how the Commission could best comply with the court's remand instructions."  *Id.*

One week later, on June 11, 2025, the Federal Circuit issued an order in which it companioned the Commission's Mandamus Petition with the Commission's appeal in *In re United States*, Fed. Cir. No. 24-1566, stayed this Court's instructions to comply with the March

*PUBLIC VERSION*

Opinion and to correct the public version of the record, and denied without prejudice the Commission's request for an order directing the release of a redacted version of the Second Remand Opinion subject to the Commission first asking this Court for such relief.  Order, *In re United States*, Fed. Cir. No. 25-127, ECF No. 9 (Apr. 11, 2025) at 5.

Subsequently, on June 12, 2025, defendant-intervenors Mosaic and J.R. Simplot wrote a letter to the Commission requesting that the Commission extend the Commission's deadline for comments on the second remand proceedings until this Court had issued a public opinion, or, in the alternative, extend the deadline by one week.  *See* Joint Request for an Extension of Time to File Comments, EDIS Doc. 853652 (July 12, 2025), attached as Exhibit. B.  In its letter, counsel explained that the fact that the Second Remand Opinion remained under seal placed counsel in a difficult position because, without a public opinion, it was unclear how interested parties could refer to the contents of the Second Remand Opinion during remand.  *Id.*  On June 18, 2025, the Commission granted this request.

## ARGUMENT

The Commission respectfully requests that the Court grant this request to issue a public version of the Second Remand Opinion that is consistent with the highlighting and double bracketing of BPI reflected in Exhibit A, and also grant our request for a one-week extension of time within which to file the Commission's second remand determination.  As explained below, good cause exists for these requests.  Regarding the motion for release of a public opinion, this request is consistent with the Federal Circuit's instructions to first seek such release from this Court.  The Commission has coordinated with the parties in reviewing the sealed opinion to ensure that the status of what it and the parties believe to be BPI is preserved pending guidance from the Federal Circuit in the *In re United States* appeals.

*PUBLIC VERSION*

Good cause also exists for the requested one-week extension of time for two reasons. First, the Commission requests an extension of time to accommodate the one-week extension it granted to the parties for filing of their comments in the administrative remand proceedings. Release of the public version of the Second Remand Opinion would enable the parties with an interest in this litigation to understand the reasoning and concerns underlying the remand to the Commission. This in turn, would enable them to provide meaningful input into the Comments that they file in the administrative remand proceedings, and benefit the Commission's consideration of the parties' arguments. Second, the Commission also requires additional time to complete its second remand determination because undersigned counsel for the Commission, Courtney McNamara, sustained an eye injury on May 24, 2025, which required her to undergo emergency treatment and take unexpected extended medical leave. This has prevented her from working on this or any other matter and, although she has recently returned to work, her ongoing treatment and recovery will hinder her ability to work on the second remand proceedings for at least the next several weeks.

When a motion is filed prior to a filing deadline, the Court may, for good cause, extend the time within which a party must act. USCIT R. 6(b)(1)(A); *see also* USCIT R. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Good cause requires the moving party to show that the deadline for which an extension is sought cannot reasonably be met despite the movant's diligent efforts to comply with the schedule. *See High Point Design LLC v. Buyers Direct. Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013) (discussing "good cause" in the context of Federal Rule of Civil Procedure 16(b)); *United States v. Horizon Prods. Int'l, Inc.*, 34 F. Supp. 3d 1365, 1367 (Ct. Int'l Trade 2014).

APPX089

Good cause exists for granting the request for release of a public version of the Second Remand Opinion, consistent with the proposed highlighting and double bracketing of BPI set out in Exhibit A.  As explained above, in the briefing before the Federal Circuit, the Commission expressed concern regarding the preservation of information that it has designated as BPI.  The Commission also explained that the absence of a redacted version of the Second Remand Opinion disadvantages the parties to the proceedings, because they have no access to the content of the opinion or the reasons for the remand.  Consequently, in its reply brief the Commission requested that the Federal Circuit direct this Court to issue a public decision that preserved the status of any BPI designated as such before the Commission.  In its June 11, 2025 order, the Federal Circuit indicated that the Commission should first seek issuance of a public version of the Second Remand Opinion from this Court.  The appellate Court also stayed any requirements for the Commission to alter its designations of BPI.  Given these two rulings, preservation of the status of designated BPI is warranted, while it also would serve the parties, the Commission, and the Court for there to be a publicly-available version of the Second Remand Opinion that will enable the interested parties to reply to the concerns expressed in that opinion.  The Commission has conferred with all counsel in ascertaining what information in the Second Remand Opinion might be BPI.  The Commission appreciates the Court's efforts to avoid inclusion of BPI in the Second Remand Opinion.  The lightly-bracketed version of the opinion contained in Exhibit A, however, identifies a handful of proposed items which the Commission (with defendant-intervenor Mosaic's concurrence in two instances) believe is properly designated as BPI.  The justifications for the proposed bracketing is below.

On page 20 of Exhibit A, the highlighted and double bracketed information contains BPI that concerns an individual firm's operations, which was afforded confidential treatment and

6

bracketed by the Commission in its Remand Views, and which the individual firm has confirmed contains sensitive BPI.

On page 24 of Exhibit A, the highlighted and double bracketed information contains BPI that concerns an individual firm's operations, which was afforded confidential treatment by the Commission in its Remand Views and in its confidential treatment of the domestic producer's questionnaire response, and which the individual firm has confirmed contains sensitive BPI. Although the firm is not specifically named in the Second Remand Opinion, the firm's identity is readily ascertainable because the Commission in its public Comments on Remand Determination cited to the same joint appendix page to which the Court cited, and identified the firm associated with it. *See* Defendant United States International Trade Commission's Corrected Comments on Remand Determination, ECF No. 183, at 14.

On page 46 of Exhibit A, the highlighted and double bracketed information relates to responses to the Commission's purchaser questionnaire, the entirety of which at this point must retain the BPI status afforded by the Commission, including the identity of the responding purchasers. Although the total count of firms responding to the pertinent question in the staff report cited by the Court is public information, revealing the bracketed information would enable certain domestic producers to ascertain the substance of the individual responses of others.

On page 47 of Exhibit A, the highlighted and double bracketed information relates to a firm's responses to the Commission's purchaser questionnaire, which as noted, at this point must retain the BPI status afforded by the Commission. The bracketed information consists of a numerical characterization from which a close approximation of the purchaser's specific BPI response could be mathematically derived from the publicly available total amount of confirmed lost sales.

*PUBLIC VERSION*

Good cause also exists for the grant of a one-week extension for the submission of the Commission's second remand determination.  Given the pending deadline for return of the second remand determination to this Court, the Commission proceeded with issuance of remand procedures, as set out in *Phosphate Fertilizers from Morocco and Russia*, 90 Fed. Reg. 24,411 (ITC Jun. 10, 2025).  These procedures included the opportunity for the parties to file remand comments with the Commission no later than June 20, 2025—notwithstanding that the companies themselves did not have access to the content of this Court's Second Remand Opinion because that opinion remained under seal.  Two of the parties, Mosaic and J.R. Simplot, requested an extension of the Commission's deadline, noting the Federal Circuit's June 11, 2025, instructions to seek release of a redacted public version of the Second Remand Opinion from this Court, and expressing their uncertainty as to how to proceed with filing comments at the current juncture.  *See* Exhibit B.  On June 18, 2025, the Commission granted this extension to all parties. If this Court were to grant the request for release of a public version of the Second Remand Opinion, that would enable counsel to consult meaningfully with their clients prior to submitting remand comments.  In turn, it would enable counsel to obtain necessary input from the companies and prepare responsive comments in the administrative remand proceedings.  At the same time, the extension of the deadline for comments compels a commensurate one-week extension for filing of the Commission's remand determination, in order to provide the Commission with adequate time to fully consider the parties' comments, and vote and draft comprehensive second remand Views that address the Court's concerns.

Further, on May 24, 2025, undersigned counsel for the Commission suffered a serious eye injury that resulted in an infection, which required her to take extended medical leave and severely limited her ability to perform any work.  Although undersigned counsel was able to

8

make a limited return to work on June 10, 2025, her ability to work on a full-time basis has been hindered and will likely continue to be hindered in the coming weeks, by impaired vision and sensitivity to light as well as undergoing continued treatment involving frequent doctor's appointments.

Thus, the requested extension will allow counsel to receive meaningful input from their clients prior to submitting their comments to the Commission; ensure that the Commission has sufficient time to consider the comments submitted by the parties and to prepare its second remand determination; and will provide additional time for counsel to be in a position to work more fully on this matter. For these reasons, the Commission respectfully requests that the Court issue a public opinion consistent with the highlighting and double bracketing of BPI reflected in Exhibit A, extend by seven days the deadline for the Commission to file its second remand determination, and similarly extend by seven days all remaining dates set forth in the Court's Second Remand Opinion.

Respectfully submitted,

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*PUBLIC VERSION*

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
Facsimile: (202) 205-3111
courtney.mcnamara@usitc.gov

Dated: June 20, 2025

*PUBLIC VERSION*

# Exhibit A

# *Slip Opinion 25-51 is Sealed*

# Exhibit B

June 12, 2025

Inv. Nos. 701-TA-650-651 (Second Remand)

**PUBLIC DOCUMENT**

**VIA ELECTRONIC FILING (EDIS)**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

Re:    *Phosphate Fertilizers From Morocco and Russia*: **Request to Extend the Deadline for Remand Comments**

Dear Secretary Barton:

Petitioner The Mosaic Company ("Petitioner" or "Mosaic") and The J. R. Simplot Company ("Simplot") jointly request that the U.S. International Trade Commission take action pursuant to 19 C.F.R. § 201.12 and extend the June 20, 2025 deadline for comments in the second remand proceeding pending issuance of a redacted version of the U.S. Court of International Trade's ("CIT") opinion in *OCP S.A. v. United States*.

Good cause exists for such an extension. On April 22, 2025, the CIT issued a merits opinion under seal that remanded the Commission's first remand results for further proceedings.[1] The CIT has not yet issued a public version of that opinion. On June 11, 2025, in response to a Commission petition for a writ of mandamus regarding the treatment of confidential information in *OCP*, the Federal Circuit denied the Commission's request for an order directing the release of

---

[1] *OCP S.A. v. United States*, Consol. Ct. No. 21-00219, Slip Op. No. 25-51 (April 22, 2025).

June 12, 2025                                                    **PUBLIC DOCUMENT**
Page 2

a redacted version of the merits opinion, but it did so without prejudice to the Commission

renewing its request after first asking the CIT for such relief.[2]

As things stand, interested parties are in a difficult position in terms of preparing written

comments to the Commission that refer to the CIT's merits opinion.  As the Commission noted

in its reply brief to the Federal Circuit, it is unclear how the Commission can proceed with the

remand proceeding or how interested parties can refer to the contents of the merits opinion

during the remand, given that it was issued under seal with no redacted version to date.[3]  We

therefore respectfully request that the Commission postpone the deadline for submitting

comments in the second remand proceeding until such time as the CIT has issued a redacted

version of the merits opinion, or in the alternative extend the deadline by one week.

We are serving this submission in accordance with the attached certificate of service.

Please contact us if you have any questions.

                                                    Sincerely,


/s/ Patrick J. McLain                               /s/ Stephanie E. Hartmann
Stephen P. Vaughn                                   David J. Ross
Patrick J. McLain                                   Lauren A. Mandell
KING & SPALDING LLP                                 Stephanie E. Hartmann
Tel: (202) 626-2956                                 Alexandra Maurer
Email: pmclain@kslaw.com                            Jacob A. Laband
*Counsel to The J. R. Simplot Company*              WILMER CUTLER PICKERING HALE
                                                    AND DORR LLP
                                                    2100 Pennsylvania Avenue NW
                                                    Washington, DC 20037
                                                    Tel: (202) 663-6564
                                                    Email:
                                                    stephanie.hartmann@wilmerhale.com
                                                    *Counsel to The Mosaic Company*

---

[2] *In Re United States*, Ct. Nos. 24-1566, 25-127, Order at 5 (Fed. Cir. June 11, 2025).
[3] *See id.* at 3.

**U.S. International Trade Commission**
**PUBLIC CERTIFICATE OF SERVICE**
**Phosphate Fertilizers from Morocco and Russia**
**Inv. Nos. 701-TA-650-651 (Remand 2)**

I, Stephanie E. Hartmann of Wilmer Cutler Pickering Hale and Dorr LLP, hereby certify that a copy of this submission was served in accordance with the Public Service List. Service was made electronically on this 12th day of June 2025 on the following:

Patrick McLain
**King & Spalding LLP**
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
pmclain@kslaw.com
tradeservice@kslaw.com

Shara L. Aranoff
**Covington and Burling LLP**
One Center City
850 Tenth Street, NW
Washington, DC 20001
saranoff@cov.com

Jonathan Zielinski
**Cassidy Levy Kent (USA) LLP**
900 19th Street NW
Suite 400
Washington, DC 20006
jzielinksi@cassidylevy.com
records@cassidylevy.com

Melissa M. Brewer
**Kelley Drye & Warren LLP**
3050 K Street, NW
Washington, DC 20007
mbrewer@kelleydrye.com
tradenotifications@kelleydrye.com

Peter Koenig
**Squire Patton Boggs**
2550 M Street, NW
Washington, DC 20037
Peter.koenig@squirepb.com

H. Deen Kaplan
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Deen.kaplan@hoganlovells.com

Kenneth G. Weigel
**Alston & Bird LLP**
950 F Steet, NW
Washington, DC 20004
Ken.weigel@alston.com

Elena G. Nosyreva
**Ministry of the Economic Development**
**of the Russia Federation**
Presnenskaya Naberzhnaya 10/2
Moscow, Russia, 125039
nosyrevaEG@economy.gov.ru

Warren E. Connelly
**Trade Pacific PLLC**
700 Pennsylvania Ave, SE, Suite 500
Washington, DC 20003
wconnelley@tradepacificlaw.com

/s/ Stepanie E. Hartmann
Stephanie E. Hartmann

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONRABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| OCP SA.,<br><br>    *Plaintiff,*<br><br>and<br><br>EUROCHEM NORTH AMERICA, CORP.,<br><br>    *Consolidated Plaintiff,*<br><br>and<br><br>PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS, LTD., and KOCH FERTILIZER, LLC,<br><br>    *Plaintiff-Intervenors,*<br><br><br>    v.<br><br>UNITED STATES,<br><br><br>    *Defendant,*<br><br>and<br><br><br>THE MOSAIC COMPANY AND J.R. SIMPLOT COMPANY,<br><br>    *Defendant-Intervenors.* | Consol. Court No. 21-00219 |

## <u>ORDER</u>

   Upon consideration of defendant's motion to publicly release the Court's opinion and order dated April 22, 2025, ECF No. 224 based upon the proposed designation of business proprietary information ("BPI") contained in Exhibit A to that motion and for an extension of

time for defendant, the United States International Trade Commission ("Commission") to file the

second remand determination in this action, and similarly to extend all other deadlines in the

Court's April 22, 2025 order, and upon all other papers and proceedings herein; it is hereby

ORDERED that the motion to issue a public version of the Court's April 22, 2025

opinion and order is granted; and it is further ordered that said public version will contain

redactions reflecting the proposed designation of BPI as set forth in Exhibit A to the defendant's

motion; and it is further

ORDERED that the defendant's request for an extension of time to file its second remand

determination is granted; and it is further ordered that:

1.      The Commission shall file its second remand determination by July 28, 2025.

2.      Plaintiff shall have 30 days thereafter to file any comments on the remand

determination.

3.      Plaintiff-Intervenors and the Consolidated Plaintiff shall have 14 days after the

filing of Plaintiff's comments to file their own comments.

4.      The Commission shall file its comments within 30 days of the filing of Plaintiff-

Intervenors' and the Consolidated Plaintiff's comments.

5.      Defendant-Intervenors shall file their comments within 14 days of the filing of

the Commission's comments.

6.      Plaintiff shall have the option of filing a reply, due 30 days from the filing of

Defendant-Intervenors' comments.


DATED:_____, 2025      _____
        New York, New York                                JUDGE


APPX101

Slip Op. No. 25-84

## UNITED STATES COURT OF INTERNATIONAL TRADE

OCP S.A.,

     *Plaintiff,*

EUROCHEM NORTH AMERICA
CORPORATION,

    *Consolidated Plaintiff,*

  *and*

PHOSAGRO PJSC, INTERNATIONAL
RAW MATERIALS LTD., and KOCH
FERTILIZER, LLC,

    *Plaintiff-Intervenors,*

v.

UNITED STATES,

    *Defendant,*

  *and*

THE MOSAIC COMPANY and J.R.
SIMPLOT COMPANY,

    *Defendant-Intervenors.*

Before: Stephen Alexander Vaden,
Judge

Consol. Court No. 1:21-cv-00219

## <u>OPINION</u>

[Granting in part and denying in part a Motion filed by the International Trade
Commission to request issuance of a redacted public opinion.]

Dated: July 3, 2025

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 2 of 26

Consol. Court No. 1:21-cv-00219                                      Page 2

*Shara L. Aranoff*, Covington & Burling LLP, of Washington, DC, for Plaintiff OCP S.A. With her on the brief are *James M. Smith*, *Sooan (Vivian) Choi*, *John J. Catalfamo*, and *Julia Shults*.

*Jeremy W. Dutra*, Squire Patton Boggs LLP, of Washington, DC, for Consolidated Plaintiff EuroChem North America Corporation. With him on the brief is *Peter Koenig*.

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, DC, for Plaintiff-Intervenor International Raw Material Ltd. With him on the brief is *Melissa M. Brewer*.

*Jared R. Wessel*, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Phosagro PJSC. With him on the brief are *H. Deen Kaplan*, *Michael G. Jacobson*, and *Cayla D. Ebert*.

*Kenneth G. Weigel*, Alston & Bird LLP, of Washington, DC, for Plaintiff-Intervenor Koch Fertilizer, LLC. With him on the brief is *Lian Yang*.

*Courtney S. McNamara*, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for the Defendant United States. With her on the brief is *Andrea C. Casson*, Assistant General Counsel for Litigation of the International Trade Commission.

*Stephanie E. Hartman*, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, for Defendant-Intervenor Mosaic Company. With her on the brief are *David J. Ross* and *Alexandra Maurer*.

*Patrick J. McLain*, King & Spalding LLP, of Washington, DC, for Defendant-Intervenor the J. R. Simplot Company. With him on the brief are *Stephen P. Vaughn* and *Neal J. Reynolds*.

**Vaden, Judge:** The International Trade Commission (the Commission) filed a Motion with the Court on June 20, 2025. *See* Def.'s Mot. for Extension of Time and for Issuance of Public Op. (Def.'s Mot.) at 1–2, ECF No. 229. The Motion requested two extensions of time in the underlying remand proceedings, which the Court granted in a Paperless Order filed on June 24, 2025. *See id.* at 1–2; Order, ECF No.

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 3 of 26

Consol. Court No. 1:21-cv-00219                                         Page 3

232.  It also asked the Court to file a public version of its April 22, 2025 opinion with

five redactions.  *See* Def.'s Mot. at 1–2, ECF No. 229; *see also OCP S.A. v. United*

*States* (*OCP Merits Decision*), 49 CIT __, Consol. Ct. No. 1:21-cv-00219 (Apr. 22,

2025), ECF No. 224.  The requested redactions are to prevent the revelation of alleged

confidential business information.  The Court will **GRANT IN PART** and **DENY IN**

**PART** the Commission's request.  It is proper to make the Opinion public.  The Court,

however, declines to make the Commission's requested redactions because each one

lacks merit.  Out of respect for the Federal Circuit's appellate review, the Court will

issue a public version of the Opinion with temporary redactions.  Unless otherwise

ordered, the Court will immediately issue an unredacted version of its April 22, 2025

*OCP Merits Decision* once the Federal Circuit resolves the Commission's mandamus

petition.

## BACKGROUND

This case began when OCP S.A. (OCP) — a Moroccan fertilizer producer —

challenged the Commission's determination that Moroccan and Russian phosphate

fertilizer imports materially injured domestic producers.  *See* Compl. ¶ 1, ECF No.

10.  Under the Tariff Act, when domestic producers petition for relief from unfair

foreign competition, the Commission must determine if imports cause or threaten to

cause "material injury" to those producers.  *See* 19 U.S.C. §§ 1671, 1673.  OCP argued

that the Commission's affirmative injury determination was unsupported by

substantial evidence.  *See* Compl. ¶¶ 44–54, ECF No. 10.  The Court agreed and

remanded the case to the Commission.  *See OCP S.A. v. United States* (*OCP I*), 47

CIT __, 658 F. Supp. 3d 1297 (2023).

Concerns surrounding confidentiality first appeared during this initial phase

of the case.  The Commission's material injury determinations often involve the

submission, analysis, and discussion of sensitive business records, which Congress

permits the Commission to redact if certain legal requirements are met.  *See* 19

U.S.C. § 1677f(b)(1); *see also* 19 C.F.R. § 201.6(b).  Before oral argument, counsel for

the Commission urged the Court to hold the entire oral argument in closed session.[1]

Audio Recording, Conf. Call Regarding Oral Arg. at 24:33–50 (Conf. Call) (June 7,

2022), ECF No. 144.  The Court declined to do so and instead held a public oral

argument with a brief confidential session at the end.  *See generally* Oral Arg. Tr.,

ECF No. 129.  The vast majority of the oral argument was held in open court, and the

Court's eventual opinion was entirely public.  *See id.*; *OCP I*, 47 CIT __, 658 F. Supp.

3d at 1297.

After the Court's opinion in *OCP I* but before the Commission filed its Remand

Determination, the Court ruled on a separate determination by the Commission.  In

*CVB, Inc. v. United States*, 47 CIT __, 675 F. Supp. 3d 1324, 1347 (2023), the Court

upheld the Commission's determination under the harmless error standard.  Shortly

thereafter, the Commission filed a Motion asking the Court to retract its opinion in

*CVB* because it believed the opinion contained confidential business information.  *See*

*CVB, Inc. v. United States* (*CVB II*), 48 CIT __, 681 F. Supp. 3d 1313, 1315 (2024).

---

[1] A closed session would bar not only the public and the media but also the corporate officers
of the parties to the case from attending.

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 5 of 26

Consol. Court No. 1:21-cv-00219                                    Page 5

The Court denied that Motion on January 8, 2024, in a written opinion. *Id.* at 1323.
First, the Court found that the Commission's wholesale failure to comply with USCIT
Rule 5(g)'s procedure for identifying confidential information meant that the
Commission forfeited any confidentiality claim. *Id.* at 1317–19. Second, the Court
found that much of the supposedly confidential information was not entitled to
confidential treatment because substantially identical information was publicly
available. *Id.* at 1320. This information was publicly available not only in the
popular press but also from the Commission's own public hearing. *Id.* The
Commission appealed this decision, and the Federal Circuit is currently considering
its appeal.

The Commission filed its Remand Determination in *OCP* on January 17, 2024.
*See* Remand Determination, ECF No. 145. The Court reviewed the administrative
record after press reports surfaced that the Remand Determination contained heavy
redactions. *See* Order Regarding Confidentiality (Confidentiality Order) at 2–3, ECF
No. 158; Jennifer Doherty, *Trade Commission Reaffirms Fertilizer Import Injury*,
LAW 360 (Jan. 18, 2024), http://bit.ly/3WbM74R (describing the Remand
Determination as "heavily redacted"). The Court found "numerous redactions" in
both the public Remand Determination and the public administrative record "that
appear to violate the principles elucidated in [*CVB II*]." Confidentiality Order at 2–
3, ECF No. 158. The redacted information included broad statements about industry
conditions and market prices as well as information that is substantially identical to

information available on domestic producers' own websites and in their mandatory securities filings. *See* Confidentiality Order Ex. 1 at 1–12, ECF No. 159.

The Court ordered the parties to appear at an evidentiary hearing to explain and justify the redactions. Confidentiality Order at 5–7, ECF No. 158. The parties had the opportunity to present witnesses and exhibits to explain the redactions and what harm would occur if the redacted information was not afforded confidential treatment. *Id.* at 7. All parties waived this opportunity and declined to present witnesses or exhibits. Hr'g Tr. at 9:23–10:8, ECF No. 193.

The Commission told the Court at the hearing that its redactions are automatic, unreviewable, and irreversible. It redacts every word of a questionnaire response — regardless of whether the information is publicly available. *See id.* at 47:2–25. These redactions are "automatic" and even occur when the same information appears on a company's public website, through Google searches, or in major newspapers like the *Wall Street Journal*. *See id.* at 35:19–36:21, 44:13–46:13. The Commission's counsel explained that this practice is not grounded in any statute or regulation. *See id.* at 20:23–21:3 (THE COURT: "Is that practice based on the text of a statue or regulation that tells you to treat everything that's in a questionnaire as secret?" MR. BIANCHI: "No, sir."). Instead, this practice "has been long-established and relied upon by the parties." *Id.* at 35:17–18; *see also id.* at 20:16–19 (MR. BIANCHI: "Information that is submitted through questionnaires has been for decades treated differently by the Commission, as our standard practice of doing so."). The Commission also argued that no court can review the Commission's redactions

because "Congress intended the confidential treatment of any business propriety information treated as such before the agency to continue in subsequent proceedings …." Commission's Suppl. Br. at 9, ECF No. 191.

On March 27, 2025, the Court issued an opinion resolving the legal issues raised by the evidentiary hearing. *See OCP S.A. v. United States* (*OCP Confidentiality Decision*), 49 CIT __, Consol. Court No. 1:21-cv-00219, 2025 Ct. Intl. Trade LEXIS 32, at *59 (Mar. 27, 2025). The Court held that the Commission cannot abuse its redaction powers by redacting non-confidential information from public view. *See id.* As the Court explained, the Commission's "practice of automatically treating all information in questionnaire responses as confidential … is inconsistent with statute, regulation, precedent, and common sense." *Id.* at *3. These unwarranted redactions were subject to judicial review and did not bind the courts because Congress authorized the federal courts to "examine, in camera, the confidential or privileged material" redacted by the Commission and to "disclose such material under such terms and conditions as [the courts] may order." 19 U.S.C. § 1516a(b)(2)(B); *see also OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *39.

The Court then exercised its Congressionally authorized power to review the Commission's redactions. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *41–59. It found that all but one of the redactions at issue were unjustified. *Id.* Most of the information the Commission labeled as confidential appeared in public security filings, company websites, and annual reports. *See OCP*

*Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *6.  The Court ordered the Commission to treat that information as non-confidential in all future filings with the Court.  *See id.* at *59.  It also directed the Commission to "abide by the statutes and regulations governing confidential treatment of information in filings of any kind with the Court."  *Id.*

     After the Court issued its *OCP Confidentiality Decision*, but before it could issue its *OCP Merits Decision*, the Commission filed a petition for a writ of mandamus with the Federal Circuit.  *See* ITC's Pet. for a Writ of Mandamus (ITC's Petition), Fed. Cir. No. 2025-127, ECF No. 2.  The petition asked the Federal Circuit to intervene in this case, set aside the Court's *OCP Confidentiality Decision*, and direct the Court to "retain the Commission's designation of information as business proprietary information … unless the submitting party has consented to its disclosure."  *Id.* at 2. The petition continued to advance the Commission's view that it possessed unbounded authority to redact information, arguing that the Commission's redactions must "be preserved in any subsequent proceedings."  *Id.* at 4.

     The Federal Circuit invited the Court to file a response to the petition, which the Court did on April 22, 2025.  The Court noted that a writ of mandamus is "an 'extraordinary remedy, to be reserved for extraordinary situations'" where lower courts usurp power or abuse their discretion.  Court's Resp. at 1, Fed. Cir. No. 2025-127, ECF No. 7 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988)).  The Commission was "not entitled to that relief" because the broad redaction power it claimed was in "direct contravention of the law," as the Court's

*OCP Confidentiality Decision* demonstrated.  *Id.* at 2–3.  Alongside its response, the Court filed its *OCP Merits Decision*, which resolved all pending motions regarding the Commission's Remand Determination.  *See OCP Merits Decision*, 49 CIT __, ECF No. 224.  The decision was filed under seal to respect the Federal Circuit's review of the Commission's mandamus petition.  It remanded the Commission's affirmative material injury determination for a second time because that determination remained unsupported by substantial evidence.  *See id.*  As part of the response filed by the Court, the Federal Circuit received a copy of the *OCP Merits Decision*.

The Commission filed its reply with the Federal Circuit on April 29, 2025.  *See* ITC's Reply in Supp. of Pet. for a Writ of Mandamus (ITC's Reply), Fed. Cir. No. 2025-127, ECF No. 8.  The Commission continued to argue that the Court's *OCP Confidentiality Decision* would "irreparably harm the Commission's ability to perform its statutory functions[.]"  ITC's Reply at 2.  It also asked the Federal Circuit to "direct the [Court] to issue a public version of the April opinion … that includes any redactions proposed by the Commission and the parties …."  *Id.* at 16.  Notably, the Commission's reply pretended to narrow its claimed redaction power.  The Commission previously told this Court it would redact quotes from a *Wall Street Journal* article if they were contained in a questionnaire response.  *See* Hr'g Tr. at 43:13–46:13, ECF No. 193.  And, in a separate case, the Commission actually redacted information that appeared in *USA Today*.  *See CVB II*, 48 CIT __, 681 F. Supp. 3d at 1320.  In its reply to the Federal Circuit, however, the Commission now suggests that parties actually *could* discuss this kind of public information if someone "put the

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 10 of 26

Consol. Court No. 1:21-cv-00219                                    Page 10

article on the public record." ITC's Reply at 11, Fed. Cir. No. 2025-127, ECF No. 8.
*But see id.* (noting the Commission continues to maintain that the same information
placed in a questionnaire would still be treated as confidential).

The Federal Circuit responded to the Commission's petition on June 11, 2025.
It granted a narrow interim stay of any directives by this Court that require the
Commission "to correct the public version of the record and to change its practices of
designating [business proprietary information] in the *OCP Case* remand proceedings
...." Order at 4, Fed. Cir. No. 2025-127, ECF No. 9 (emphasis in original).  All other
requests were denied, including the Commission's request to order this Court to issue
its *OCP Merits Decision* with any redactions the Commission desires.  *See id.* (noting
that the Commission had not yet even requested this Court "issue a redacted version"
of the decision).  The Federal Circuit consolidated the remaining issues arising from
the Commission's petition with the separate appeal of this Court's opinion in *CVB II*.
*See id.* at 4–5.  Those cases will be argued together, and the Federal Circuit appointed
a second *amicus curiae* to argue in support of this Court's opinions in both cases.  *See
id.*

The Commission filed its latest Motion on June 20, 2025, asking for two
extensions of time and for release of a public, redacted version of the *OCP Merits
Decision*.  *See* Def.'s Mot. at 6–9, ECF No. 229.  This Motion arrived fifty-nine days
after the Court issued the *OCP Merits Decision* under seal.  It asks this Court for five
redactions in a fifty-page opinion.  The first redaction request involves information
about domestic producers' warehousing found on page 20 of the Court's decision.  *See*

*id.* at 6–7.  The second request relates to information on the same page recounting what domestic producers, as a group, reported to the Commission about their inventory reshipment practices.  *See id.*  Page 24 contains the third request, arising from the Court's analysis that domestic producers' reported inventory reshipment volumes are commercially insignificant.  *See id.* at 7.  The fourth request on page 46 and the fifth request on page 47 relate to information gathered by "the Commission's purchaser questionnaire[.]"  *Id.*  They involve sales domestic producers may have lost to subject imports.  *See id.*  Only the first three requests are supported by the company that submitted the information.  *See id.* at 6–7.  The Court offered the parties an opportunity to submit responses to the Commission's Motion.  *See* Order, ECF No. 231.  No party submitted one.

## STANDARD OF REVIEW

The Court has jurisdiction over the underlying legal dispute pursuant to 28 U.S.C. § 1581(c).  Statute authorizes the Court to examine information that the Commission labels as "confidential or privileged" and to "disclose such material under such terms and conditions" as the Court may order.  19 U.S.C. § 1516a(b)(2)(B).  The Court's exercise of its power to disclose this information must be informed by the statutory scheme governing what kind of information can be redacted when obtained by the Commission, the related regulations, and by relevant common law rights of public access to judicial proceedings.  *See* 19 U.S.C. § 1677f; 19 C.F.R. § 201.6; *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *33–41.

## DISCUSSION

The Commission asks the Court to release a public version of the *OCP Merits Decision* with five redactions to address purportedly confidential information. *See* Def.'s Mot. at 6–9, ECF No. 229. Two of those requests — the fourth and the fifth — are made without the support of any company that submitted information in the underlying investigation. The remaining three are requested by both the Commission and a company that participated in the Commission's proceedings. For the foregoing reasons, the Court **GRANTS** the Commission's request for the release of a public version of the *OCP Merits Decision* and **DENIES** the Commission's five requested redactions. Out of respect for the Federal Circuit's review of this case, the Court will issue a public version of the *OCP Merits Decision* with temporary redactions pursuant to the Commission's unmeritorious requests. Unless otherwise ordered, these redactions will be withdrawn once the Federal Circuit completes its review of the Commission's petition.

### I.    Redaction Requests Made Without a Party's Consent

The Commission asks the Court to redact two pieces of information without support from any company that participated in the underlying investigation. On pages 46 and 47 of the *OCP Merits Decision*, the Court generally described information gathered from the Commission's purchaser questionnaire. *See OCP Merits Decision*, 49 CIT __, slip op. at 46–47, ECF No. 224. This information detailed specific sales that domestic fertilizer producers lost to importers. *See id.* The fourth and fifth redaction requests in the Commission's Motion argue that the Court's

characterization of the information would allow some readers to ascertain the underlying confidential information. *See* Def.'s Mot. at 7, ECF No. 229. Because no party to the investigation contends this information is proprietary, the Court's summary should be released without redaction.

Information gathered in Commission investigations may only be redacted when it is labeled as proprietary "by the *person submitting the information* …." 19 U.S.C. § 1677f(b)(1)(A) (emphasis added). If the Commission does not receive a redaction request from a submitting party, its only function is ministerial. The statute requires that it "shall disclose … any information … which is not designated as proprietary by the person submitting it." *Id.* § 1677f(a)(4)(B); *see Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218 (1930) (defining ministerial duties as those statutory duties "so plainly prescribed as to be free from doubt and equivalent to a positive command"). Indeed, were the Commission to ignore this statutory command, a petition for a writ of mandamus very well might lie against it. *See Wilbur*, 281 U.S. at 218–19 (holding mandamus relief against executive branch officials is limited to the enforcement of nondiscretionary, plainly defined, and purely ministerial duties).

Here, no company joins the Commission's two requests to redact portions of pages 46 and 47. These companies, not the Commission, are "the owners of the information" in dispute. *See* ITC's Petition at 6, Fed. Cir. No. 2025-127, ECF No. 2. The Commission does not argue that any company requests confidential treatment of this information in the Opinion. Therefore, the information cannot be redacted. *See* 19 U.S.C. §§ 1677f(b)(1)(A), (a)(4)(B); 19 C.F.R. § 201.6(a)(1).

The Commission's two requests would lack merit even if they had corporate support.  Redactions are permissible only if the party seeking redaction identifies "specific, concrete harm" that disclosure would cause.  *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55; *see also AmerGen Energy Co. ex rel. Exelon Generation Co. v. United States*, 115 Fed. Cl. 132, 141 (2014) (holding "vague and speculative allegations of injury" are insufficient to support a claim of confidentiality).  The Commission's own regulations adopt this requirement and limit the definition of "[c]onfidential business information" to information that, if disclosed, would either "impair[] the Commission's ability to obtain such information" in future investigations or "caus[e] substantial harm to the competitive position of the [submitter]."  19 C.F.R. § 201.6(a)(1).  The Commission's two requests allege that the Court's general characterizations could allow someone to discover the underlying confidential information.  *See* Def.'s Mot. at 6–7, ECF No. 229.  Even assuming that is true, the Commission does not explain why disclosure would "caus[e] substantial harm to the competitive position of the [information's submitter]."  19 C.F.R. § 201.6(a)(1).  Nor does it explain how disclosure might "impair[] the Commission's ability to obtain such information" in other investigations.  *Id.*  And no "submitter" has requested such treatment.  The Commission's failure to satisfy its own regulation is total.  *Compare* Def.'s Mot. at 7, ECF No. 229, *with* 19 C.F.R. § 201.6(a)(1).

The Commission's related argument that the entire questionnaire cited on pages 46 and 47 "must retain the [business proprietary information] status afforded

by the Commission" misunderstands the law.  It is "information," not documents, that are confidential.  *See* 19 U.S.C, § 1677f(a)(4)(A)–(B) (discussing how to treat "any proprietary *information* received in the course of a proceeding") (emphasis added); 19 C.F.R. § 201.6(b)(1) (setting procedures for requesting "confidential treatment of business *information*" ) (emphasis added).  When making redactions, "the question is not whether a document is confidential[;] … [i]t is whether *information* is confidential."  *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *9 (emphasis in original).  What document the information appears in is immaterial.  *See id.* at *29 ("Information that is public anywhere ought to be public everywhere.").  These requests are **DENIED**.

## II.    Redaction Requests Made with a Party's Consent

The Commission's remaining three redaction requests are supported by one company that participated in the underlying investigation.  *See* Def.'s Mot. at 6–7, ECF No. 229.  The first of these redactions involves the Court's general characterization of domestic producers' warehouse and distribution facilities found on page 20 of the *OCP Merits Decision*.  *See id.* at 6.  The second request involves the Court's description of the reshipment of phosphate fertilizer on that same page.  *See id.*  The third request arises from the Court's non-numerical comparison between a company's total fertilizer shipment volume and its inventory reshipment volume, which is found on page 24 of the decision.  *Id.* at 7.  Each request lacks merit.

Proprietary designation "by the person submitting the information" is insufficient on its own to warrant redaction.  19 U.S.C. § 1677f(b)(1)(A); *see also OCP*

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 16 of 26

Consol. Court No. 1:21-cv-00219                                    Page 16

*Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *30–33 (citing 19 U.S.C. § 1677f(b)(1)(B)(i)–(ii)). Parties requesting confidential treatment must also submit either a "non-proprietary summary" of the information or "a statement [explaining] that the information is not susceptible to summary …." 19 U.S.C. § 1677f(b)(1)(B)(i)(I)–(II). They additionally must explain why disclosure of the information would pose a "specific, concrete competitive harm." *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55 (citing cases). Mere "vague and speculative allegations of injury" are insufficient. *AmerGen Energy*, 115 Fed. Cl. at 141.

The relevant statute creates a mechanism to address "[u]nwarranted designations" of information as confidential. 19 U.S.C. § 1677f(b)(2). "Unwarranted designations" occur when information is "availab[le] from public sources," and the submitter cannot explain why "the [confidentiality] designation is warranted[.]" *Id.* Similarly, the statute requires the Commission to "disclose … any proprietary information received in the course of a proceeding if it is disclosed in a form which cannot be associated with, or otherwise be used to identify, operations of a particular person[.]" *Id.* § 1677f(a)(4)(A).

The Commission's regulations mirror these statutory requirements. They establish the "[p]rocedure for submitting business information in confidence." 19 C.F.R. § 201.6(b). This procedure requires the party submitting the information to include: (1) a nonconfidential "written description of the … information[,]" (2) a "justification for the request for its confidential treatment[,]" and (3) a "certification

… that substantially identical information is *not available to the public*[.]" *Id.* § 201.6(b)(3)(i)–(iii) (emphasis added).  The regulations also limit the Commission's definition of "[c]onfidential business information" to only include information that, if disclosed, would "impair[] the Commission's ability to obtain such information" in future investigations or would "caus[e] substantial harm to the competitive position" of the submitter.  *Id.* § 201.6(a)(1).  Parties must show "good cause" before the Commission will redact "[n]onnumerical characterizations of numerical confidential business information (e.g., discussion of trends) …." *Id.*  Similar instructions appear on the Commission's questionnaires.  *See* Blank U.S. Producers' Questionnaire at 3, J.A. at 20,833, ECF No. 205.

## A. Warehouse and Distribution Information

The Commission and the company believe the Court should redact general information about domestic producers' warehousing and distribution facilities on page 20 of the *OCP Merits Decision*.  Def.'s Mot. at 6–7, ECF No. 229.  They claim that this portion of the Opinion contains "sensitive" business proprietary information but do not elaborate on what harm, if any, the company would suffer if the disputed portion was released without redaction.  *See* Def.'s Mot. at 6–7, ECF No. 229.  Their redaction request fails for three reasons.

First, the disputed text does not connect any specific company with a particular warehousing arrangement; instead, it merely summarizes the different types of warehousing arrangements domestic producers in general use.  *See OCP Merits Decision*, 49 CIT __, slip op. at 20, ECF No. 224.  Information is not confidential if it

cannot be "associated with[] or otherwise … used to identify … a particular person[.]" 19 U.S.C. § 1677f(a)(4)(A). This Court previously recognized that specific information about individual companies' warehousing locations, agreements, and partners is confidential if it is not publicly available. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *19. By contrast, the disputed portion of the sealed Opinion only summarizes warehousing behaviors broadly applicable to domestic producers. *See OCP Merits Decision*, 49 CIT __, slip op. at 20, ECF No. 224. It cites to two pages of the Remand Determination that discuss the specific warehousing arrangements of multiple companies. *See* Remand Determination at 23–24, ECF No. 145. The opinion never states which companies use which arrangements, and a third party could not glean that information by looking at the cited pages of the Remand Determination. The Commission's claim that the Opinion contains information about "an individual firm's operations" is incorrect. *See* Def.'s Mot. at 6, ECF No. 229.

Second, the Motion fails to identify any "specific, concrete harm" that disclosure of this information would cause. *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55. The Commission only asserts that the disputed portion of the sealed Opinion "contains [business proprietary information[.]" Def.'s Mot. at 6–7, ECF No. 229. Neither the Commission nor the company explain why disclosure of this information would either "impair[] the Commission's ability to obtain such information" or "caus[e] substantial harm to the competitive position of the [information's submitter]." 19 C.F.R. § 201.6(a)(1). Therefore, the Commission's

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 19 of 26

Consol. Court No. 1:21-cv-00219                                    Page 19

request is legally insufficient. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55; *see also AmerGen Energy*, 115 Fed. Cl. at 141 (holding that confidential treatment should not be granted based on "vague and speculative allegations of injury").

Third, this Court has held that publicly available information regarding "distribution and storage networks" is not confidential. *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *14; *see, e.g.*, Mosaic 2022 Form 10-K at 14-16 (Feb. 23, 2022), https://bit.ly/4gmB3cl (describing the company's distribution network); Nutrien, 2019 Annual Report at 12 (Feb. 19, 2020), https://bit.ly/4dQ4GBK (same). The *OCP Confidentiality Decision* addressed whether specific information about companies' storage and distribution centers could be redacted by the Commission. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *44–50. The Court concluded that almost all of this company-specific information is publicly available in securities filings and on companies' websites so that it could not be redacted. *See id.* A general characterization of domestic producers' warehousing arrangements cannot be confidential if the underlying, company-specific information is publicly available. The Commission's redaction request is **DENIED**.

## B. Reshipment of Phosphate Fertilizer

The Commission and the company at issue ask the Court to redact language about domestic producers' ability to reship inventories. Def.'s Mot. at 6–7, ECF No. 229. The Commission claims that, if this information were not redacted, it would

reveal a specific company's operations. *Id.* The request is frivolous. *See Frivolous*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Lacking a legal basis or legal merit; not serious; not reasonably purposeful[.]").

A key, public aspect of the underlying legal dispute in this proceeding hinged on whether domestic producers could reship inventories from their originally intended destination. *See OCP I*, 47 CIT __, 658 F. Supp. 3d at 1314–18. The Court's original opinion directed the Commission to "conduct a new analysis of the conditions of competition with respect to domestic reshipment …." *Id.* at 1318. That opinion discussed how the Commission failed to collect (1) evidence of "reshipment of fertilizer that has already reached its intended destination" and (2) proof that "domestic reshipment of fertilizer from inventories had occurred as a normal business practice." *Id.* at 1317. None of these quoted phrases were redacted, and the Commission never asked the Court to redact any portion of that opinion.

On remand, the Commission issued a new questionnaire to U.S. producers and importers, which publicly discussed the issue of inventory reshipment. *See* Remand Determination at 4, ECF No. 145. The questionnaire asked responding firms to describe their "inventory operations and distribution network," including by "identifying each location where your firm held inventories" and by "describing the modes of transportation used to distribute shipments." Blank U.S. Producers' Questionnaire at 4, J.A. at 20,834, ECF No. 205. The Commission also asked these producers if they shipped "phosphate fertilizer from one inventory location to another inventory location" during the period of review. *Id.* After analyzing the firms'

questionnaire responses, the Commission continued to conclude that domestic producers could reship their inventories. *See* Remand Determination 23–24, ECF No. 145. The Commission redacted almost the entirety of the pages of the Remand Determination associated with this conclusion based on its theory that any information in a questionnaire response should automatically be redacted. *See id.*; Hr'g Tr. at 20:16–22, ECF No. 193.

The Court needed to analyze the Commission's reshipment finding to write the *OCP Merits Decision*, as the parties continued to contest whether substantial evidence supported that finding. *See, e.g.*, OCP's Comments on the Remand Determination at 3, ECF No. 156; *see also In re Violation of Rule 28(d)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011) (noting improper redaction "hampers [the Court's] consideration and opinion writing"). In the disputed portion of the Opinion, the Court reviewed the modes of inventory reshipment domestic producers told the Commission they employed. *See OCP Merits Decision*, 49 CIT __, slip op. at 20, ECF No. 224. The Opinion directly quoted from the Commission's summary of a particular company's reported reshipment behavior *without* naming the company at issue. *See id.* The quoted information, in essence, said that the unnamed company reshipped inventories during the period of review, *i.e.*, the key issue in this case. It mirrors language that the Court used in its original public remand opinion and that the Commission used in its public remand questionnaires. *Compare id.*, *with OCP I*, 47 CIT __, 658 F. Supp. 3d at 1314–18, *and* Blank U.S. Producers' Questionnaire at 4, J.A. at 20,834, ECF No. 205.

Case 1:21-cv-00219-SAV    Document 233    Filed 07/03/25    Page 22 of 26

Consol. Court No. 1:21-cv-00219                                    Page 22

The Commission wants the Court to redact this portion of its Opinion because the quoted Remand Determination language originally came from a company's questionnaire response. *See* Remand Determination at 24, ECF No. 145. The Commission believes these responses should be automatically redacted in full without any analysis of whether the underlying *information* can receive confidential status under the relevant statutory and regulatory scheme. *See, e.g.*, Hr'g Tr. at 47:12–13, ECF No. 193. But the law forbids document-wide redaction policies and only authorizes redacting "information" that meets certain conditions. *See* 19 U.S.C. § 1677f(a)(4) (requiring the Commission to disclose both nonattributable "proprietary information" and "information … [that is] not designated as proprietary by the [submitter]"); *id.* § 1677f(b) (authorizing the Commission to redact "[p]roprietary information" under certain circumstances); *see also* 19 C.F.R. § 201.6(a)(1) (defining what kind of "information" the Commission will treat as confidential). The Court can only redact the requested portion of the Opinion if the redaction is justified under the relevant legal standards. The Commission's *ultra vires* preferences do not govern.

The Commission and the company fail to articulate any "specific, concrete harm" that the disclosure of this information might cause. *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55. The Motion only claims that the disputed portion of the Opinion "contains [business proprietary information] that concerns an individual firm's operations[.]" Def.'s Mot. at 6, ECF No. 229. The Motion does not detail why the information is proprietary. *See id.* Nor does it explain why disclosing this information would either "impair[] the Commission's ability to

obtain such information" or "caus[e] substantial harm to the competitive position of the [information's submitter]." 19 C.F.R. § 201.6(a)(1). This failure renders the Commission's redaction request legally insufficient.

Regardless, the Court doubts any party could articulate sufficient cause for the requested redaction. Anyone reading the public materials in this case would know that domestic fertilizer producers claim "reshipment of fertilizer[] is a normal business practice …." Public Remand Determination at 5, ECF No. 146. It is unclear how "substantial harm to the competitive position" of a company could arise by the Court's disclosure that a domestic producer claims to reship fertilizer. 19 C.F.R. § 201.6(a)(1). Redacting this information would also be inappropriate because the language at issue touches on the core legal issue in the case. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *4 ("Unnecessary claims of confidentiality erode public trust in the judiciary by limiting public access.") (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring)). In short, the Commission attempts to prohibit the most basic discussion of the very question the Commission was charged with answering. *See In re Violation of Rule 28(d)*, 635 F.3d at 1360. Its request to do so is **DENIED**.

### C.    Reshipment Frequency

The Commission and the company also ask the Court to redact a non-numerical comparison the Court made between (1) an unidentified company's overall shipment volume and (2) its inventory reshipment volume, which is found on page 24 of the *OCP Merits Decision*. The Commission states that this portion of the Opinion

reveals a specific company's "sensitive" business proprietary information because one could identify the company at issue by comparing the Court's citation to citations made elsewhere in the case docket. Def.'s Mot. at 7, ECF No. 229. The Court declines to redact this information because, even if the company can be identified, the Court's Opinion does not reveal any confidential information.

No party disputes that the Court's comparison would be non-confidential if the company at issue was hidden. The Commission admits "the firm [at issue] is not specifically named in the Second Remand Opinion …." *Id.* at 7. It argues, however, that the company can be identified by comparing the Court's citation to the Joint Appendix with the same Joint Appendix citations in other filings on the docket. *See id.* The Commission notes that, in its own public comments on the Remand Determination, it cites to the same Joint Appendix page to which the Court cites for the disputed proposition. *See id.* The Court carefully concealed the company's name when it cited to that page, but the Commission did not act with this level of diligence. Thus, an enterprising reader could scour the docket, compare the Court's Opinion with the Commission's comments, and figure out which company the Court was discussing. *See id.* The Commission's own citation to allegedly confidential information, in other words, has created a risk that the information will be inadvertently disclosed. *Cf.* Fed. Cir. R. 25.1(c)(1) (noting information that "has appeared in a filing without being marked confidential" loses its "status as subject to a protective order").

But knowing the identity of the company at issue does not automatically make the disputed information confidential. The disputed portion of the Opinion made a comparison between two confidential numbers. *See OCP Merits Decision*, 49 CIT __, slip op. at 24, ECF No. 224. "Even if information is confidential or business proprietary, the Court's use of approximations [can] appropriately summarize[] the information without revealing exact figures." *CVB II*, 48 CIT __, 681 F. Supp. 3d at 1320. Comparators such as "de minimis" or "negligible" do "not reveal the actual [confidential information]" when both numbers remain hidden. *Id.* at 1321. Likewise, the Commission's own regulations recognize that "[n]onnumerical characterizations of numerical confidential business information …." are not generally entitled to confidential treatment. 19 C.F.R. § 201.6(a)(1).

The disputed comparison on page 24 of the sealed Opinion can only reveal confidential information about the company if a reader knows one of the numbers being compared. Nothing in the Opinion reveals that information. Additionally, neither the Commission nor the company allege "good cause" for the redaction or explain the "specific, concrete harm" that could arise if the information is disclosed.[2] *See id.*; *OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55. Therefore, the disputed information will not be redacted. *See* 19 C.F.R. § 201.6(a)(1) (requiring a party to show "good cause" for the redaction of non-numerical

---

[2] This is before taking into the account that the information at issue is between five and eight years old. *See OCP Confidentiality Decision*, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32, at *55–58 (discussing why "[s]tale information is not entitled to confidential treatment").

characterizations of confidential business information). The Commission's request is **DENIED**.

## CONCLUSION

Even independent agencies are accountable to the law. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025). The Commission's Motion asks the Court to make five redactions because the disputed portions of the Opinion allegedly contain confidential information. The Motion never explains why the information is confidential. In all five instances, it fails to allege any specific, concrete harm that would arise should the Court not make the requested redactions. Two redactions arrive without the support of the party who submitted the allegedly confidential information. The remaining three relate to general statements made by the Court, which do not reveal any underlying confidential information.

The Court **DENIES** these requested redactions, which run afoul of Congressional command and the Commission's own regulations. The Court will issue a public version of the *OCP Merits Decision* with the redactions temporarily included to respect the Federal Circuit's review of the Commission's mandamus petition. Absent contrary instructions, the Court will remove these redactions on the resolution of the Commission's petition.

**SO ORDERED**.

 /s/ Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: July 3, 2025
          New York, New York